## UNITED STATES v. MAZZOCHI et al.
### No. 260.

Circuit Court of Appeals, Second Circuit.

Feb. 4, 1935.

David Paley, of New York City (Jay Cohen, of New York City, of counsel), for appellants.

Martin Conboy, U. S. Atty., of New York City (Charles T. Murphy, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

### PER CURIAM.

The defendants Mazzochi and Millinan, with seven others, were twice indicted in the District Court; each indictment being in four counts, the fourth being for conspiracy. At the trial the prosecution moved to consolidate the two indictments, which was done, and upon the third day Mazzochi and Millinan pleaded guilty; the trial continuing against the others, whom this appeal does not concern. At its conclusion the court sentenced Mazzochi and Millinan to two years' imprisonment on each conspiracy count, to be served consecutively, and to two fines of $10,000 each, thus duplicating the maximum sentence. The only question on this appeal is whether the two counts laid separate crimes. No bill of exceptions was prepared, and of course none would have been possible upon a plea of guilty, since the evidence had nothing to do with these defendants. Each count was the same except for its concluding clause; each alleged that all the defendants from the 1st of January until April 9th, when the indictment was filed, conspired with other persons unknown to the grand jury in the vicinity of the corner of Twenty-Fourth street and Seventh avenue, 90 Bowery and 277 Grand street, to buy and sell heroin, cocaine, "and divers forms of drugs to the grand jurors unknown," after such drugs had been unlawfully imported into the United States. In pursuance of this general scheme, one defendant was to lease a specified apartment where the drugs were to be kept, four other defendants at 90 Bowery and at 277 Grand street were to solicit orders on the telephone for the sale of the drugs, and Mazzochi and Millinan were to deliver them pursuant to the orders so secured. So far the counts are verbatim and literatim identical, but their conclusions differed. In one it was alleged that on March 30th Mazzochi and Millinan and three of the other defendants were to meet near 220 West Twenty-Fourth street in order to sell to one Harris between two and three ounces of heroin. In the other it was alleged that on that day Mazzochi and Millinan and two other defendants were to meet near 220 West Twenty-Fourth street and attempt to sell to two other persons sixty-two grains of smoking opium. The overt acts were identical.

Thus these two alleged conspiracies were precisely alike in content and personnel up to the point where the two sales which distinguish the counts came into prospect. The two conspirators were the same; the same crimes were proposed; the same drugs were to be sold; the way they were to be sold was the same; the several conspirators were to play the same part in their disposition. It might indeed be possible to describe in substantially the same terms two conspiracies, really separate because from the outset one was to result in one sale only, the other in another; but the scheme alleged in these counts forbids such an interpretation. It is apparent that at the outset no particular sale could have been specifically in mind; the conspirators could not know to whom they would sell; they arranged a plan for disposing of their drugs by which they should be sold on general solicitation, and the specific sales were the result of that method. This is the only reasonable interpretation of the language. If there had been a trial, possibly the prosecution might not have been rigidly held to its pleading; but here it must be, for there is nothing else by which to judge its meaning; nothing can be shown dehors the indict-

ment to prove what the pleader meant but did not express.

Now it would be preposterous to argue that, if several persons combine to sell drugs generally, that single venture breaks up into as many separate ventures as there chance to be sales. The sales are the conclusion and the fruit of the original plan, the very reason for its being; they may be multiform, but the plan is single. Sprague v. Aderholt (D. C.) 45 F.(2d) 790. In this regard a conspiracy is wholly unlike the substantive crimes which it contemplates. Cases like Blockburger v. U. S., 284 U. S. 299, 52 S. Ct. 180, 76 L. Ed. 306, and United States v. Busch, 64 F.(2d) 27 (C. C. A. 2), are therefore beside the point. We have ordinarily, of course, no power over the sentence, though we have repeatedly expressed our disapproval of cumulating sentences by verbal devices. Harrison v. United States (C. C. A.) 7 F.(2d) 259; Hartson v. U. S. (C. C. A.) 14 F.(2d) 561; Amendola v. U. S. (C. C. A.) 17 F.(2d) 529; Nash v. U. S. (C. C. A.) 54 F.(2d) 1006. In the case at bar, fortunately the question does fall within our powers, for without separate conspiracies the two sentences were unlawful. Even the most hardened malefactor may insist that, when Congress has fixed a limit to his punishment, no judge, however righteously indignant, shall mete out more.

Judgment reversed; sentence reduced to the maximum for a single count.