## PIQUETT v. UNITED STATES.
### No. 5550.

Circuit Court of Appeals, Seventh Circuit.
Jan. 2, 1936.

Rehearing Denied Feb. 26, 1936.

John Elliott Byrne and Henry E. Pieruccini, both of Chicago, Ill. (Edwin T. Peifer, of Chicago, Ill., of counsel), for appellant.

Michael L. Igoe, of Chicago, Ill., and Brien McMahon, Richard J. O'Connor, and J. Albert Woll, Sp. Assts. to Atty. Gen., for the United States.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

SPARKS, Circuit Judge.

Appellant was convicted on the charge of conspiracy to violate a law of the United States, under section 37 of the Criminal Code, 18 U.S.C.A. § 88. That section provides that if two or more persons conspire to commit any offense against the United States, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall suffer the penalty therein prescribed.

The offense which appellant is alleged to have conspired to commit is defined in section 141 of the Criminal Code, 18 U.S.C.A. § 246, and so far as it is material to the questions herein presented, reads as follows:

"Whoever shall rescue * * * any person arrested upon a warrant or other process issued under the provisions of any law of the United States * * * or shall harbor or conceal any person for whose arrest a warrant or process has been so issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than six months, or both."

Appellant was named in the indictment as the sole defendant, and his co-conspirators were alleged to have been William Loeser, Harold B. Cassidy, Arthur O'Leary, James Probasco, deceased, and John Dillinger, deceased. The pertinent allegations of the indictment, and the

overt acts are substantially set forth in the margin.[1]

[1] Substance of Pertinent Allegations of Indictment.

On April 28, 1934, there was issued by the District Court of the United States for the District of Minnesota, under the provisions of section 37 of the Criminal Code, commonly known as the conspiracy statute, a federal warrant for the apprehension and arrest of Homer Van Meter, alias Henry Adams, alias Kenneth Jackson, (hereinafter when Homer Van Meter's name is mentioned in the indictment, his aliases are also used) which was issued on an indictment returned April 28, 1934, by a grand jury for the United States, empaneled and sworn in the District Court for the District of Minnesota, and pending against Homer Van Meter, and other persons, which indictment charged a violation of section 37 of the Criminal Code of the United States.

That said Homer Van Meter became, at the time of and by reason of the issuance of said warrant, a fugitive from federal justice and remained such fugitive continuously from April 28, 1934 until August 23, 1934, at which latter time he was shot and killed, and that said Homer Van Meter was continuously from April 28, 1934 to August 23, 1934, evading arrest and apprehension on said warrant and was avoiding discovery and service of said warrant upon his person.

That William Loeser, alias Ralph Robeind, Harold Bernard Cassidy, and Arthur W. O'Leary, none of whom are herein named as defendants, but all of whom are hereinafter referred to as co-conspirators, and one Louis Piquett, hereinafter referred to as defendant, each of Chicago, and one James Probasco and one John Dillinger, both lately deceased and hereinafter referred to as decedents, continuously from May 15, 1934, or thereabouts, to June 12, 1934, or thereabouts, in the City of Chicago, each well knowing the premises, unlawfully, willfully, knowingly and feloniously did conspire, combine, confederate and agree together, and with each other, to commit an offense against the United States of America, in this, that they unlawfully, willfully, knowingly and feloniously did conspire to violate Section 141 of the Criminal Code of the United States of America, that is to say, that said defendant, the said co-conspirators, and the said decedents, at the City of Chicago, having notice and with knowledge of the fact that a federal warrant had been issued for the arrest and apprehension of Van Meter, and having notice and with knowledge of the fact that he was in fact a fugitive from federal jus-

tice and was evading arrest and apprehension on said warrant, and was avoiding discovery and service of said warrant on his person, did, for the purpose of preventing his discovery, and for the purpose of preventing his arrest on said warrant, unlawfully conspire to harbor and conceal Van Meter at certain premises known as 2509 North Crawford Avenue in the City of Chicago; that it was part of said unlawful conspiracy to harbor and conceal Van Meter, that the co-conspirators, the decedents, and the defendant, Louis Piquett, should obtain and render to Van Meter, at the premises above described, such protection, sustenance, and services, including medical and surgical treatment and attention, and such other assistance as might be required in furtherance of said unlawful conspiracy, and should obtain for Van Meter such surgical operations on and alterations of his face, fingertips, and other parts of his body as might prevent his discovery and arrest under the warrant; that the defendant, the co-conspirators, and the decedents, in furtherance of said unlawful conspiracy and to effect the object of the same, did and performed the following overt acts:

Overt Acts.

1. That on or about June 1, 1934, defendant, Piquett, and the co-conspirators, and the decedent, John Dillinger, did unlawfully arrange with the decedent James Probasco, for the use and occupancy of the premises at 2509 North Crawford Avenue, in the City of Chicago, in which to conceal and harbor Van Meter.

2. That on June 2, 1934, defendant Piquett, in the City of Chicago, requested co-conspirator Cassidy to go to said premises for the purpose of affording medical services and attention to Van Meter, so as to assist in preventing his discovery and arrest.

3. That on June 2, 1934, the defendant Piquett went to the place of abode of said co-conspirator Loeser, at 536 Wrightwood Avenue, in the City of Chicago, and did then and there arrange with said co-conspirator that the said co-conspirator should go to 2509 North Crawford Avenue on the evening of June 3, 1934, for the purpose of performing certain surgical operations on Van Meter that would aid in preventing discovery and arrest of Van Meter.

4. That on June 3, 1934, the co-conspirators, Loeser and Cassidy, did go, as requested by Piquett, to 2509 North Crawford Avenue and did then and there perform certain surgical operations upon Van

pleas of former acquittal and res adjudicata. Both were dismissed on the Government's motions.

■ The first assignment of error challenges the validity of the indictment. Appellant first contends that the indictment does not charge that the warrant for Van Meter was issued under the provision of any law of the United States. His reasoning is that as the indictment in the instant case merely states that the warrant for Van Meter was issued on an indictment against him for the violation of section 37 of the Criminal Code of the United States (18 U.S.C.A. § 88), it is not tantamount to saying that Van Meter was charged with crime as a defendant in the indictment referred to, nor that a warrant was issued for his arrest as a defendant. We think this contention is supported neither by law nor by logic.

■ Further objection to the indictment is that its clauses "for the purpose of preventing the discovery * * *" and "for the purpose of preventing his arrest * * *" modify, and apply to the charge of conspiracy rather than to the words of the statute "harbor and conceal." Of a similar character is appellant's contention that the phrase of the indictment, "having notice and with knowledge * * *" applies to the charge of conspiracy as distinguished from the words of the statute "harbor and conceal," and that the words "after notice" are not synonymous with the words "having notice."

A recognition of the difference between the crime of conspiracy and the substantive offense therein referred to is sufficient to meet all of these objections. They are highly technical at best and under this court's ruling in Jelke v. United States, 255 F. 264, constitute no sufficient basis for striking down the indictment. Further objections to the indictment are urged, but as they are of a similar technical character, and were in no way prejudicial to appellant's rights, we think they do not merit discussion.

It is next contended by appellant that the court erred in dismissing his pleas of former acquittal and res adjudicata.

Prior to appellant's conviction he had been indicted, tried and acquitted in the District Court on a charge of conspiracy with O'Leary, Loeser, Cassidy, Dillinger and Probasco to harbor and conceal John Dillinger while the latter was a fugitive from justice in the Probasco house. That indictment was returned by a Federal Grand Jury in the Eastern Division of the Northern District of Illinois. The conspiracies charged in the two indictments will for convenience be referred to as the Dillinger conspiracy and the Van Meter conspiracy.

The pleas of former acquittal and res adjudicata alleged in substance that the offense charged in the Van Meter conspiracy indictment was the same as the one charged in the Dillinger conspiracy indictment, of which Piquett had been acquitted, and also that the overt acts alleged in the Van Meter conspiracy indictment had been issues in the first trial; that the Government and the defense had introduced evidence of the affirmative and negative of said issues, and that the issue of guilt or innocence of the conspiracy and of each overt act charged in the present indictment had been decided in favor of Piquett and against

---

Meter, and that Piquett, and the co-conspirator, O'Leary and decedent, John Dillinger, were then and there present.

5. That on June 3, 1934, Piquett and the co-conspirator, O'Leary, went to 2509 North Crawford Avenue and Piquett did then and there receive from Van Meter the sum of five thousand dollars, in the presence of the co-conspirators, Loeser, Cassidy, and O'Leary, and the decedents, Dillinger and Probasco.

6. That on June 4, 1934, Piquett at 536 Wrightwood Avenue, Chicago, requested co-conspirator Loeser to go again to 2509 North Crawford Avenue, in Chicago, on June 5, 1934, for the purpose of rendering to Van Meter further surgical and medical services and attention.

7. That on said June 5, 1934, co-conspirator Loeser did return as requested by defendant, Piquett, to 2509 North Crawford Avenue, and did then and there render further surgical and medical services and attention to Van Meter, so as to assist in preventing his discovery and arrest.

8. That from June 1, 1934, to June 12, 1934, Piquett, the said co-conspirators O'Leary, Loeser, Cassidy, together with decedents Probasco and Dillinger, unlawfully and clandestinely did furnish and afford shelter, sustenance, protection and services to Van Meter at 2509 North Crawford Avenue, Chicago, so as to prevent the discovery and arrest of Van Meter.

the Government by the verdict of acquittal in the first case.

The record discloses that the conspiracies were similar in that (1) they were between the same persons, (2) they were to be carried on in the same house, (3) by means of similar surgical operations, to be performed by the same doctors, (4) for similar compensations, and (5) both subjects were fugitives from federal warrants. They were dissimilar in that (1) Dillinger and Van Meter were different individuals, (2) the operation was performed on Dillinger on May 28, 1934, and upon Van Meter on June 3, 1934, (3) the period of time covered by the first indictment was from May 1, 1934, to June 4, 1934, while that of the second indictment was from May 15, 1934, to June 12, 1934 (the evidence, however, does not disclose that the operation upon Van Meter was contemplated prior to May 28, 1934), (4) the compensation for the Dillinger operation was paid in two installments, $3,000 on May 27, and $2,000 on June 3, while $5,000 for the Van Meter operation was paid on June 3, 1934, (5) the warrants of arrest which were sought to be evaded were from different courts, (6) the overt acts relied upon in the first indictment were on the respective dates of May 15, 27, 28, and June 3, and 4, 1934, while those of the indictment in this cause were June 1, 2, 3, 4, and 5, 1934.

Before a plea of former acquittal can be sustained, the offenses involved must be identical in law and fact. If the offenses are distinct in law, the plea is bad regardless of how closely they are connected in point of fact. In determining whether a conviction or acquittal on one indictment is a bar to a prosecution on another, the real inquiry is whether the first indictment was such that the accused might have been convicted under it by proof of the allegations in the other indictment. If such inquiry be answered in the affirmative, the bar is complete, but if it be answered in the negative, there can be no bar of former conviction or acquittal. Morey v. Commonwealth, 108 Mass. 433. In that case, the court said,

"The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. * * *

"The question of the justice of punishing the offender for two distinct offences growing out of the same act was a matter for the consideration of the grand jury and the attorney for the Commonwealth in the presentment and prosecution, of the court below in imposing sentence, or of the executive in the exercise of pardoning power. It is not within the jurisdiction of this court as a court of error."

It is true that in the Morey Case the act of the defendant was in violation of two separate statutes, while in the case at bar it is claimed that there were two separate violations of the same statute. That, however, would not appear to be a sound reason for distinguishing one from the other in view of the decision in Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 711, 59 L.Ed. 1151. In that case the defendant was charged with having robbed the contents of six mail bags on the same day and in the identical transaction. The bags were separately numbered, and each bag constituted the basis of a separate count. The Supreme Court in affirming the six several convictions cited the Morey Case with approval, and said, "Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged." That opinion also cites Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489, which, in turn, also cites the Morey Case. See, also, Blockburger v. United States (C.C.A.) 50 F.(2d) 795, affirmed 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.

In the following cases the Court held, as in the Morey Case, that the same transaction might constitute separate offenses under different statutes. Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 714, 59 L.Ed. 1153; Kelly v. United States (C.C.A.) 258 F. 392; People v. Bain, 358 Ill. 177, 193 N.E. 137. In each it was held that a conviction or acquittal of the first charge could not

be pleaded as a bar to the second charge, because, owing to the difference in language of the statutes involved, the evidence necessary to convict on one charge would not be sufficient to convict on the other. In other words, the court merely applied the general rule for testing the validity of the plea of former acquittal which we have hereinbefore referred to. Adverting to the case of Ebeling v. Morgan, supra, the six charges were in violation of the same statute, and the facts which constituted the several offenses were identical, with the exception that the six mail bags were numbered differently. In the instant case the parties whom appellant was charged in the two indictments with having conspired to harbor and conceal, were different individuals, and there were other points of difference, as we have already observed, not only with respect to the allegations of the indictment, but also with respect to the proof. Other cases relating to conspiracy and supporting the principle involved in the cases we have discussed, are as follows: Thomas v. United States (C.C.A.) 156 F. 897, 17 L.R.A.(N.S.) 720; Vlassis v. United States (C.C.A.) 3 F.(2d) 905; Yenkichi Ito v. United States (C.C.A.) 64 F.(2d) 73; Beddow v. United States (C.C.A.) 70 F.(2d) 674.

In support of his contention to the contrary, appellant relies upon many cases, all of which seem to us either to be inapplicable or inconsistent with the great weight of authority. We shall refer to them briefly. United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168, merely holds that a conspiracy may have continuance in time. It does not hold that all conspiracies have that characteristic, neither does it hold that there may not be consecutive conspiracies, such as we believe are involved in the instant case, nor does it hold that the general rule for testing a plea of former conviction or acquittal does not apply to conspiracies generally. In United States v. Mazzochi (C.C.A.) 75 F.(2d) 497, Lefco v. United States (C.C.A.) 74 F.(2d) 66, and Allen v. United States (C.C.A.) 4 F.(2d) 688, each indictment charged a conspiracy of the most general character and contemplated no specific act, or object of its operation. In Murphy v. United States (C.C.A.) 285 F. 801, 814, three different conspiracies were involved. The court held that the first and second were separate and that the second and the third were the same, and said, "It is not the great similarity in most of the facts constituting the separate offenses that determines this question, but the presence of a fact necessary in one offense and absent in another that determines whether the offenses are different." The cases of Oleson v. State, 20 Wis. [58] 62, and Hurst v. State, 86 Ala. 604, 6 So. 120 [111 Am.St.Rep. 79], may be said not to be in accord with the rule laid down in Morgan v. Devine, supra. In the Morgan Case the Court recognized a conflict in the adjudicated cases, and said, "We think the better doctrine recognizes that, although the transaction may be in a sense continuous, the offenses are separate, and each complete in itself." The case of Ebeling v. Morgan, supra, distinguishes the case of In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658.

█ It is obvious that the substantive offense of actually harboring Dillinger was a separate and distinct offense from that of actually harboring Van Meter, and we are convinced that the conspiracy or conspiracies to carry out those objects must of necessity constitute separate offenses, in view of the fact that the grand jury and the District Attorney chose to make them separate. Morey v. Commonwealth, supra. In view of this ruling, there was no error in refusing to strike the testimony of certain witnesses because that testimony was a mere repetition of their testimony in the former trial.

█ Appellant further contends that the court erred in dismissing the plea of former acquittal instead of trying the issue raised by the plea. In this there was no error. It was not alleged, nor is it now contended, that Dillinger and Van Meter were one and the same person. In fact, appellant conceded that they were not, for he predicates error in overruling his demurrer to the indictment because, as stated in the demurrer, the pleader did not name Van Meter as a co-conspirator. That, indeed, was unnecessary, and doubly so if they were one and the same person, for Dillinger was named as a co-conspirator. Under these circumstances, the court very properly assumed that they were separate individuals, and that alone was fatal to the plea. Admitting without conceding that the court should have tried the issue tendered by the plea, yet there was no prej-

udicial error in dismissing the plea, for, under the allegations of the indictments and the admission that Van Meter and Dillinger were separate individuals, no amount or kind of evidence would have established the identity of the offenses.

The plea of res adjudicata is based upon the assumption that the two conspiracies were not separate and distinct offenses. Having otherwise ruled, there remains no foundation for the plea. There was no error in dismissing it.

It is next contended that the evidence did not disclose that appellant, or any of the alleged conspirators had knowledge of the alleged fact that Van Meter was a fugitive from the warrant issued by the Federal Court of Minnesota. It is conceded that when knowledge is an element of an offense it must be proved, and it was necessary to a conviction, that appellant, or one or more of his co-conspirators, should have had knowledge that Van Meter was a fugitive from the federal warrant as charged. A perusal of the entire record convinces us that there was substantial evidence given to the jury to support its finding in this respect, and it being a question of fact, we can not disturb the verdict.

It is further urged by appellant that the proof of the agreement to alter Van Meter's facial features and finger lines, the purpose thereof not being disclosed by the evidence, was not sufficient to sustain the charge of conspiracy to harbor and conceal him for the purpose of preventing his arrest under the federal warrant. This court will take judicial knowledge of the well recognized fact that identification by finger prints is about the surest method known, and that it is in universal use in the detection of criminals. We also feel warranted in saying that its use in other fields is comparatively very slight. There was only one conclusion at which the jury could rationally arrive from the fact that appellant and his co-conspirators were altering Van Meter's finger lines, and that was that they were trying to conceal his identity. That fact, coupled with the knowledge of appellant and his co-conspirators that Van Meter was a fugitive from the federal warrant in question, warranted the jury in finding that they conspired to conceal Van Meter at the time and place charged, for the purpose of preventing his arrest under that warrant.

Appellant contends there was error in refusing to strike the evidence of witness Patzke with respect to a delivery of $500 to her by appellant to induce Loeser to "blow," and with respect to conversations to the effect that appellant requested her to tell Loeser to say that the money received from Dillinger by appellant was for legal fees. This contention is based (1) on the alleged fact that the evidence in question related to acts occurring subsequent to the conspiracy, hence they could not be used for the purpose of proving the conspiracy, and (2) the transactions referred to were in no way wrongful. There is no merit in this contention. It is not denied that the word "blow" in the sense it was used meant "leave." It is obvious that the conversations referred to were not evidence of acts or conduct of one conspirator sought to be binding on another. They related to appellant's own acts and conduct, and were to be charged to him alone as evidence of his consciousness of guilt, and we have no doubt of their admissibility.

It is further urged in argument that the court erred in admitting Exhibit 13, which was a receipt of the investigating officer to the witness Patzke for the $500 referred to, which contained the serial numbers of the bills constituting that sum. If there were error here, which we do not concede, it was certainly not of a prejudicial character, and would not constitute a ground for reversal.

It is further contended that the court erred in refusing to permit corroboration of appellant's testimony with respect to his efforts to cause Dillinger's surrender to the authorities. It is not discernible how this corroborating evidence could affect in any way the charge of conspiring to harbor and conceal Van Meter. Moreover, when one desires to abandon a conspiracy, once entered into, he must act in good faith, and his abandonment must be complete. The record discloses that his abandonment, if any, was not of that character, and the court's ruling in this respect was correct.

Another alleged error upon which appellant relies is that he was not permitted to give evidence with respect to his mental and physical condition when testifying as a witness. This is a matter which is peculiarly within the discretion of the trial court, and the record

discloses no semblance of an abuse of that discretion.

It is further urged that the court erred in refusing to instruct the jury that the acquittal of appellant in the Dillinger conspiracy case could be considered by them as affecting the credibility of the witnesses who testified in both cases. From what we have heretofore said in this opinion, the contention can not be sustained.

Reversible error is also predicated upon the argument of the District Attorney in suggesting to the jury that appellant was responsible for murders not shown by the evidence, but assumed by him to have been committed by Dillinger and Van Meter. Our examination of the bill of exceptions, together with the entire record pertaining in any manner to this assignment, convinces us that the assignment does not fairly quote the language of the District Attorney. We think the language employed was not subject to the construction given it by appellant. Moreover, appellant saved no exception to the court's ruling with respect thereto.

Judgment affirmed.