**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph MUELBL, Defendant-Appellant.**

No. 83-2396.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1984.

Decided July 2, 1984.

Rehearing and Rehearing In Banc Denied July 26, 1984.

Certiorari Denied Nov. 5, 1984. See 105 S.Ct. 388.

Nathan A. Fishbach, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

William H. Theis, Chicago, Ill., for defendant-appellant.

Before WOOD, COFFEY, and HENLEY,* Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, Joseph Muelbl, was convicted in the United States District Court for the Eastern District of Wisconsin of conspiracy to distribute marijuana, cocaine and methaqualone in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal he raises two issues: (1) whether the district court erred in instructing the jury that it could convict the defendant if they found that he was a member of a conspiracy to distribute any one of the three controlled substances when the indictment charged the conspiracy to distribute those substances in the conjunctive; and (2) whether the district court violated Muelbl's Sixth Amendment right to confront his accusers in limiting his counsel's cross-examination of two witnesses. We affirm.

I

The evidence in the record demonstrates that Joseph Muelbl engaged in drug transactions with several individuals who subsequently testified against him at trial. For example, Brian Stehling testified, under a grant of immunity, that he was introduced to the defendant, Muelbl, in the spring of 1979, and subsequent to that meeting, Muelbl began providing him with quantities of marijuana, cocaine and qualudes on a "front" (consignment) basis. Stehling would in turn sell these drugs to other individuals (including Michael Taylor and James Nigbor who also testified against Muelbl).

In addition to receiving drugs from Muelbl for further distribution, Stehling testified about several other drug transactions he had conducted with the defendant

Muelbl. For example, on one occasion Stehling contacted Muelbl regarding a large quantity of marijuana he had for sale. Muelbl agreed to purchase the marijuana and Stehling thereafter delivered it to Muelbl's Tower Road house in Stoughton, Wisconsin.

As previously noted, at the beginning of the alleged conspiracy, Muelbl provided Stehling with drugs which Stehling in turn sold to other individuals, including Michael Taylor and James Nigbor. As the conspiracy developed, Muelbl began having direct contact with both Taylor and Nigbor. For example, Taylor testified that subsequent to his arrest in 1980 he purchased cocaine from Muelbl on three or four occasions. With regard to James Nigbor, the evidence demonstrated that during the summer of 1980, Muelbl met Nigbor at Nigbor's Milwaukee, Wisconsin apartment. Following this meeting, Muelbl informed Nigbor that marijuana, qualudes and currency had been stolen from his Tower Road home. At Muelbl's request Nigbor moved into the Tower Road house in December of 1980. Nigbor's testimony indicates that at the time Muelbl was living in various other houses in Wisconsin.

According to Nigbor, Muelbl provided him with various packages of marijuana and cocaine which Nigbor was instructed to deliver to certain customers who came to the Tower Road house, in exchange for cash. In addition, Nigbor was directed to maintain a record of the drug transactions. Furthermore, in accordance with Muelbl's instructions, some of the money from those transactions was retained in a safe located at the Tower Road home.

In the early morning hours of February 18, 1981, law enforcement officers conducted a search of the Tower Road home pursuant to a warrant. During that search, the officers found approximately 420 pounds of marijuana, 19 grams of cocaine, the afore-

---

* The Honorable J. Smith Henley, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

mentioned drug ledger, and $81,320 of currency in the safe.

The jury found Muelbl guilty of conspiracy to distribute, dispense or possess with the intent to distribute marijuana, cocaine, or methaqualone on June 15, 1983. Muelbl was subsequently sentenced to 4½ years of imprisonment. From that conviction the defendant appeals.

## II

### A. THE PROPRIETY OF THE COURT'S JURY INSTRUCTIONS

The defendant contends that the trial court improperly instructed the jury with regard to the scope of the conspiracy the government was required to prove to obtain a conviction under the grand jury's indictment.[1] The indictment provided, in pertinent part:

"1. Beginning in or about 1979 and continuing through in or about February, 1981, in Milwaukee, in the state and Eastern District of Wisconsin, and in diverse other places throughout the Eastern District of Wisconsin; and in Stoughton, Wisconsin; Fort Lauderdale, Florida; and in diverse other places known and unknown to this grand jury,

### JOSEPH MUELBL

and other co-conspirators unnamed in this indictment or unknown to this grand jury, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree together to commit acts in violation of the laws of the United States, that is, to intentionally, knowingly, and unlawfully distribute, dispense, and possess with the intent to distribute, and to knowingly aid and abet the distribution, dispensation, and possession with intent to distribute, quantities of marihuana, a Schedule I non-narcotic controlled substance; cocaine, a Schedule II narcotic controlled substance; and methaqualone, a Schedule II non-narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2."

While the objects of the conspiracy (marijuana, cocaine, and methaqualone) are alleged in the indictment in the conjunctive, the district court instructed the jury that they could convict the defendant if they found a conspiracy to distribute or possess with the intent to distribute any one of these drugs. Specifically, the trial court instructed the jury:

"The indictment charges a conspiracy to distribute, to dispense, and to possess with the intent to distribute three controlled substances; marijuana, cocaine and methaqualone, parentheses, [sic] qualudes, close parentheses [sic].

"In order to convict the defendant, you must unanimously find that the defendant willfully became a member of the conspiracy and that the conspiracy had as its object the distribution, or dispensa-

---

**1.** The government has argued that the defendant waived any error in the conspiracy instruction because the defendant's trial counsel along with the prosecution submitted a joint proposed jury instruction very similar to that given by the court which included the "or" language between the objects of the conspiracy. Furthermore, the government points out that the defendant's trial counsel did not object to the instruction as it was given by the trial court. Our court has recognized on several occasions that to preserve error for appeal,

"Counsel's objection to a jury instruction must state 'distinctly the matter to which he objects and the grounds of his objection.' Fed.R.Crim.P. 30; *United States v. Jackson,* 569 F.2d 1003, 1009 (7th Cir.1978); *United States v. Clavey,* 565 F.2d 111, 118 (7th Cir. 1977). Counsel had a duty to make the dis-

trict court aware of any alleged error in jury instructions so that the court may take appropriate action. *See* Fed.R.Crim.P. 51; *Jackson,* 569 F.2d at 1009."

*United States v. Verkuilen,* 690 F.2d 648, 652 (7th Cir.1982). However, failure to object to an instruction does not foreclose review on appeal if that instruction constitutes plain error. Fed. R.Crim.P. 52(b). Several courts have held that if a jury charge impermissibly amends the indictment, plain error is apparent. *See United States v. Harvey,* 428 F.2d 782, 783 n. 1 (9th Cir.1970); *United States v. Carroll,* 582 F.2d 942, 944 (5th Cir.1978); and *United States v. Jones,* 647 F.2d 696, 699 n. 2 (6th Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981). Accordingly, we proceed to the merits of the defendants' arguments.

tion, or the possession with the intent to distribute marijuana, cocaine, *or* qualudes. You may also find the defendant guilty if you find that he willfully became a member of the conspiracy which had as its object the distribution, or dispensation, or the possession with the intent to distribute all three drugs, *or any combination thereof.*

"Now, there are several alternatives that are included in the indictment, namely, marijuana, cocaine, or qualudes, and I urge you to make sure that the jury is unanimous as to any one or more than one of those three items before you can enter a verdict of guilty. In other words, if all twelve of you do not agree as to the several alternatives, even though you are not agreed on all three of them, but if twelve of you are agreed on one or more, then you have arrived at a verdict that would warrant your entering a finding of guilty; but if some of you agree as to one item and some of you as to another, that's not unanimity; or, put it another way, if three of you agree that there was a conspiracy to distribute marijuana and five of you agree that there was a conspiracy to distribute cocaine, and then another small number, five of you, agree that there was, or four of you agreed that there was a conspiracy to distribute qualudes, that would not constitute unanimity." (Emphasis added).

Muelbl argues that, as charged in the indictment, the jury was required to find a conspiracy to distribute each and every one of the controlled substances; that is, the jury was required to find that the defendant Muelbl was a member of a conspiracy which had as its object the distribution of marijuana, cocaine, *and* methaqualone. On the contrary, while the court did require unanimity of the jurors as to any drug or drugs for which it found a conspiracy to distribute to exist, the court's instructions, according to Muelbl, clearly converted the conjunctive phrasing of the indictment into

a disjunctive statement of the object or objects of the conspiracy. Thus, under Muelbl's argument, contrary to the charge in the indictment, the jury was not required to find a conspiracy to distribute which encompassed all three drugs. In Muelbl's view, this was a constructive amendment of the indictment in violation of his Fifth Amendment right to indictment by a grand jury.[2]

■ As noted by the Sixth Circuit:

"Except as to matters of form or surplusage, there is a per se rule prohibiting judicial amendments to the terms of an indictment ... The rule began as a prohibition of formal alterations of the wording of an indictment. *See Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). In *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court held that events at trial can effectively amend an indictment, requiring reversal of a conviction even in the absence of a formal amendment."

*United States v. Cusmano*, 659 F.2d 714, 717–18 (6th Cir.1981) (citations omitted).

As the preceding quote indicates, the Supreme Court in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), examined the "constructive" amendment question. *Stirone* involved an indictment which alleged that the defendant unlawfully interfered with the movement of sand in interstate commerce in violation of the Hobbs Act. The district court, however, permitted the government to offer evidence of an effect upon interstate commerce not only with respect to sand, but also with respect to certain steel shipments, such evidence being clearly outside the indictment since no mention of interference with steel was made in the indictment. The jury was then instructed that as to the interstate commerce aspect of the Hobbs Act violation, the defendant's guilt could be

---

**2.** The Fifth Amendment provides in relevant part:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless

on a presentment or indictment of a Grand Jury...."

based on either a finding of an effect on the interstate movement of sand or a finding of an effect on interstate movement of steel. The Court of Appeals affirmed. In its decision to reverse, the Supreme Court stated:

> "The *Bain* case, which has never been disapproved, stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.... Yet the court did permit that in this case. The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous. Compare *Ford v. United States*, 273 U.S. 593, 602 [47 S.Ct. 531, 534, 71 L.Ed. 793 (1927)]; *Goto v. Lane*, 265 U.S. 393, 402 [44 S.Ct. 525, 527, 68 L.Ed. 1070 (1924)]. While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. Compare *Berger v. United States*, 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314]. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge."

*Stirone*, 361 U.S. at 217–18, 80 S.Ct. at 273–74 (footnote and citations omitted).

■ In a recent case concerning constructive amendments, the Ninth Circuit stated:

> "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

"*United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir.1981) (emphasis in original); (*quoting Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969)).

> "The cases have found a constructive amendment where there is a 'complex of facts distinctly different from those set forth in the charging instrument and not ... where there is a single set of facts.' C. Wright, *Federal Practice and Procedure*, Crim.2d, § 516 at 27 (1982).

\*　　\*　　\*　　\*　　\*　　\*

> "In addition, courts have found constructive amendments where the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved."

*United States v. Von Stall*, 726 F.2d 584, 586 (9th Cir.1984). *See also United States v. Galiffa*, 734 F.2d 306 at 314 (7th Cir. May 11, 1984). It is clear, upon review of the record and the preceding case law, that

no amendment, constructive or otherwise, occurred in the present case.

The defendant herein was charged with conspiracy to distribute or possess with the intent to distribute certain drugs, i.e., marijuana, cocaine, and methaqualone. That conspiracy is exactly the conspiracy charged in the trial court's instruction to the jury. Our review of the instruction in question does not lead this court to conclude that its language materially altered the theory of criminal liability charged in the grand jury's indictment. *Accord, United States v. Smolar,* 557 F.2d 13, 19 (1st Cir.), *cert. denied,* 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977). It is clear to this court that when the grand jury indicted the defendant for conspiracy to violate federal drug laws with regard to these three drugs, that it also charged a conspiracy to distribute and possess with intent to distribute each of these drugs individually. It simply defies logic to assert that the grand jury did not find a conspiracy to distribute with respect to each of the drugs individually, but rather found only a conspiracy to distribute all of the drugs collectively.

The present case is unlike *Stirone* where the grand jury indicted with regard to one act allegedly in violation of the Hobbs Act, evidence was introduced with regard to a completely separate and unindicted act which could likewise form the basis of a Hobbs Act violation, and the trial court instructed the jury that either one of those acts would be sufficient to support a conviction. Here, the grand jury indicted the defendant for participation in a conspiracy to commit unlawful transactions with regard to three separate drugs. That is exactly the offense charged in the trial court's instruction to the jury. Thus, under the *Von Stall* analysis, there was no "complex set of facts" presented to the jury which was distinctively different from those set forth in the charging instrument. *See Von Stall,* 726 F.2d at 586. Furthermore, the crime charged in the indictment was not materially different or substantially altered at trial and thus it is not "impossible to know whether the grand jury

would have indicted for the crime actually proved." *Id.* Clearly the grand jury charged a conspiracy with regard to each drug—marijuana, cocaine, and Methaqualone—and a unanimous finding of conspiracy as to any one of those three drugs was sufficient to sustain a conviction. We are not left with a concern that the grand jury would not have indicted as to any one of these drugs separately. Thus the problem raised in *Stirone v. United States* where the court was concerned with whether the grand jury would have indicted on the additional act raised at trial, is not present in this case.

The question remains, however, whether there was such a substantial variance between the indictment and proof at trial, that reversal is required. Even if a variance did occur it is well-established law that:

> "[a] variance between allegation and proof is not fatal to a criminal conviction, assuming the proof is of an offense the grand jury intended to charge, unless it affects substantial rights of the accused, Rule 52(a) of the Federal Rules of Criminal Procedure, either by depriving him of an adequate opportunity to prepare a defense or by exposing him to a risk of being prosecuted twice for the same offense."

*United States v. Kramer,* 711 F.2d 789, 795 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). We are unable to see how such a variance, if one existed, could have deprived the defendant of an adequate opportunity to prepare his defense since he was on notice that he was charged with conspiracy to distribute or possess with intent to distribute all three drugs. Thus, he clearly expected the evidence at trial to involve transactions with all three drugs. Furthermore, the record in the present case would clearly protect him from any additional jeopardy for the conspiracy charged. Since any existing variance does not affect a substantial right under Fed.R.Crim.P. 52(b), any error was harmless and reversal is not required.

As a final note to the discussion, we hasten to point out that the case law is in accord with our position.[3] Specifically, our own circuit recently addressed the same issue raised in the present action. In *United States v. Kramer*, the defendant was charged with conspiring to distribute or possess with intent to distribute marijuana *and* amphetamines. The trial court instructed the jury to find the defendant guilty of the conspiracy charged in the indictment if it found that he had conspired to distribute or possess with intent to distribute marijuana *or* amphetamines, *or both*. *Kramer*, 711 F.2d at 797. According to the court, the "[d]efendant claim[ed] that because Count I charg[ed] him with conspiring to 'possess with intent to distribute and distribute marijuana, ... *and* amphetamines'. (emphasis supplied), the government was required to prove that the conspiracy involved both drugs." *Id.* The court disagreed:

"A single conspiracy to commit different drug offenses is a single criminal offense, *Braerman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); since a defendant cannot be sentenced twice for the same offense, charging defendant in two counts for what were different objectives of the same conspiracy would have been improper. *United States v. Mazzochi*, 75 F.2d 497 (2d Cir.

1935). The only question then is whether the word 'and' in the phrase 'marijuana ... and amphetamines' in Count I of the indictment may be read to mean 'or,' whether, that is, a defendant charged with committing a single offense by doing A and B, each a different means of committing the offense, may be convicted if the jury finds that he did either A or B. The Supreme Court long ago held that a defendant may be convicted in that circumstance, *Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), and that remains the rule. *United States v. Conti*, 361 F.2d 153 (2d Cir.1966), vacated on other grounds, 390 U.S. 204. Even were that not the rule, defendant would not be able to show that he was prejudiced by the trial judge's reading of Count I. Defendant knew of that reading before his trial began (R. 39), and if the grand jury thought the evidence before it sufficient to charge defendant with a conspiracy involving two drugs, *a fortiori* it must have thought that evidence sufficient to find a conspiracy involving one of those drugs."[4]

711 F.2d at 797.

We also note that the defendant has ignored a veritable plethora of cases holding

3. In support of his argument, Muelbl cites to a Second Circuit decision which appears to have approved a jury instruction that required the jury to find, *inter alia*, that at least two individuals agreed to all the objects of the alleged conspiracy in order to convict the defendant. *United States v. Bernstein*, 533 F.2d 775, 793 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). If such was the Second Circuit's position in 1976, it appears to have subsequently changed its view in line with this Circuit's *Kramer* decision. *United States v. Murray*, 618 F.2d 892 (2d Cir.1980), *see* discussion, *supra*. To the extent that *Bernstein* remains the position of the Second Circuit following its *Murray* decision, we decline to follow its lead.

4. The defendant argues that the reasoning in *Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), *overruled on other grounds*, *Garland v. State of Washington*, 232 U.S. 642, 645, 34 S.Ct. 456, 457, 58 L.Ed. 772 (1914), does not apply in a conspiracy case. According to the defendant, *Crain* was a case

involving an indictment charging a substantive count which alleged several different means of committing that count. The court held that proof of any one of those means was sufficient to convict. On the contrary, according to the defendant, the present case involves the objects of the conspiracy, that is, the ends of the conspiracy which is the very essence of the conspiracy; i.e., one conspires to do a particular act and that is what the grand jury charges. Thus, according to the defendant, the analysis involving means of committing a specific substantive offense does not apply to indictments charging conspiracies to commit various objects. While we are not convinced that the defendant can logically justify this argument since we fail to see the distinction between an indictment alleging in the conjunctive various means of committing a substantive offense, and an indictment alleging in the conjunctive various objects of a charged conspiracy, we are not required to pass on his contention since we do not find any amendment or variance in the indictment and

that where several statutes are alleged as the objects of a conspiracy, the government need only establish one of those statutes to convict. For example, the court in *United States v. Wilkinson*, 601 F.2d 791 (5th Cir. 1979) stated:

> "A criminal conspiracy is an agreement between two or more persons to commit a crime against the United States accompanied by an overt act in furtherance of the agreement.... A single conspiracy may have several objectives.... *When a conspiracy to violate two statutes is alleged, the jury may find the defendant guilty if they believe beyond a reasonable doubt that he or she conspired to violate either one of the statutes.*"

*Id.* at 796 (emphasis added). Similarly, in *United States v. Murray*, 618 F.2d 892 (2d Cir.1980) the defendants were indicted for conspiracy to import *and* to distribute cocaine *and* marijuana, in violation of 21 U.S.C. §§ 846 and 963. The defendants argued, *inter alia*, that they had been denied the right to a unanimous verdict. In response the court stated:

> "The essence of the crime of conspiracy is an agreement to put into effect an illegal project. Even if the agreement contemplates more than one nefarious end, there is still but a single agreement.... It was not improper for the government to have alleged in a single count that the conspiracy here involved

two illegal substances.... We find no analytical difference between a count charging that a conspiracy involved both cocaine and marijuana and a count charging that a conspiracy involved both importation and distribution. If the former allegation does not contravene the policies furthered by the duplicity doctrine, then the latter is equally permissible. Although the defendants stress that two separate conspiracy statutes are involved here, we do not regard that fact as controlling. *When an indictment charges a conspiracy to violate two statutes, the jury may find the defendant guilty if it believes beyond a reasonable doubt that he conspired to violate either one of the statutes.*"

*Id.* at 898 (emphasis added, citations and footnote omitted). *See also, United States v. Mack*, 112 F.2d 290, 291 (2nd Cir.1940); *United States v. Grizaffi*, 471 F.2d 69, 73 (7th Cir.1972), *cert. denied*, 411 U.S. 964, 93 S.Ct. 2142, 36 L.Ed.2d 684 (1973); *United States v. James*, 528 F.2d 999, 1014 (5th Cir.1976), *cert. denied*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976); *United States v. Abascal*, 564 F.2d 821, 832 (9th Cir.1977), *cert. denied*, 435 U.S. 942, 953, 98 S.Ct. 1521, 1583, 55 L.Ed. 538, 804 (1978); and *United States v. Solomon*, 686 F.2d 863, 875 (11th Cir.1982). We see no reason to distinguish these cases alleging conspiracies to commit several crimes against the United States from the present

---

thus no reversible error occurred in the present case.

The defendant also appears to argue that the result in *Kramer* contradicts this court's earlier *United States v. Baranski*, 484 F.2d 556 (7th Cir.1973) decision, and, in addition, was overruled by this court's subsequent decision in *United States v. Shively*, 715 F.2d 260 (7th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). Neither of these cases, however, contradict the result in *Kramer*. In *Baranski*, the court was required to decide whether the defendants had standing to question the constitutionality of only one of three unlawful objects of the charged conspiracy. If the jury had convicted on one of the two other objects of the conspiracy there would have been no question that the conviction would have withstood review. However, the jury returned a general verdict and thus the court could not

ascertain whether the jury had convicted based on one or both of the two uncontested objects or on the allegedly unconstitutional object of the conspiracy. Because of this uncertainty, if the third object was found unconstitutional, the conspiracy conviction had to be overturned. Clearly, *Baranski* is distinguishable from the present case since Muelbl is not contending that any one of the objects of the conspiracy in the present case is unconstitutional or otherwise void. With regard to *United States v. Shively*, it is apparent to this court that the panel in *Shively* did not address the issue raised in *Kramer*. Specifically, the court in *Shively* stated "*[a]ssuming,* still, that the *conjunctive* wording of the conspiracy charge matters...." 715 F.2d at 267 (emphasis added). Thus, rather than deciding the issue raised in *Kramer,* the court assumed the necessity to prove all objects, without passing on that issue.

conspiracy to distribute several different drugs.

## B. THE LIMITATION OF CROSS–EXAMINATION.

The defendant Muelbl argues that the trial court improperly limited his cross-examination of two witnesses, namely James Nigbor and Brian Stehling. During his cross-examination of James Nigbor, defense counsel asked "Had you ever had private drug dealings with Mr. Stehling?" The government objected to this question on the grounds that such testimony was inadmissible under Fed.R.Evid. 404(b) and the objection was sustained. The defense counsel then asked "Before you met Mr. Muelbl, were you involved in dealing drugs?" Again, the government objected based on 404(b). This time in the jury's absence the court engaged in an extended colloquy with counsel and finally concluded that defense counsel's question was within the ambit of 404(b) since, in the court's view, defense counsel was trying to attack the witness's credibility by offering proof of bad character to show that the witness was unbelievable. Then during the cross-examination of Brian Stehling, the defense counsel asked how often Mr. Stehling had drug dealings with Mr. Nigbor and Mr. Taylor back in the mid-1970's (prior to the present conspiracy). This question was objected to on the basis that it was outside the ambit of Mr. Stehling's direct testimony and also outside the ambit of the alleged conspiracy. The trial court again sustained the government's objection.

Our court recently recognized in *United States v. De Gudino,* 722 F.2d 1351, 1354 (7th Cir.1983):

"It is clear that the sixth amendment guarantees each defendant the right to effective cross-examination of the witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In order for a cross-examination to be effective, defense counsel must be permitted to expose the facts from which the factfinder can draw inferences relating to the reliability of the witness. Counsel must be able to make a record

from which to argue why the witness might be biased. *Id.* at 318, 94 S.Ct. at 1111. It is also clear that a trial court has discretion to control and limit cross-examination. *Smith v. Illinois,* 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968); *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). This circuit reconciled these competing principles in *United States v. Fitzgerald,* 579 F.2d 1014, 1021 (7th Cir.), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978), which held that, when reviewing the adequacy of a cross-examination, the question is whether the jury had sufficient information to make a discriminating appraisal of the witness's motives and bias."

*Id.* at 1354 (footnote omitted). *See also, United States v. Xheka,* 704 F.2d 974, 984 (7th Cir.1983); and *United States v. Hinton,* 683 F.2d 195, 200 (7th Cir.1982).

The defendant argues that rather than trying to demonstrate that the witnesses were bad persons and therefore not to be believed, he was trying to show that Taylor, Nigbor, and Stehling had a long-standing drug relationship and that this relationship had commenced some time before the parties became acquainted with Muelbl. According to Muelbl:

"[w]ith appropriate freedom, defendant would have been able to establish that these witnesses had long-standing drug relationships that ante-dated the charged conspiracy and Mr. Muelbl's supposed entry into their world. If placed in their true light, these witnesses would have been seen as the conspirators who functioned so well without Muelbl that the jury would have had good grounds to question his entry into the conspiracy, especially in the role described by them."

Appellant's Brief at 13–14.

First of all we note that the district court could properly limit cross-examination of Nigbor based on Fed.R.Evid. 404(b). *See United States v. Holman,* 680 F.2d 1340 (11th Cir.1982). Furthermore, the court's discretionary power to limit cross-examination could justify its exclu-

sion of further testimony of Stehling on collateral transactions outside the ambit of the charged conspiracy. *De Gudino,* 722 F.2d at 1354. The question that remains is whether the exclusion of the evidence at issue violated the Sixth Amendment. As we believe the jury was provided with "sufficient information to make a. discriminating appraisal of the witness[es'] motives and bias[es]," we hold no violation occurred. For example, during cross-examination of Nigbor, Muelbl's attorney elicited information regarding Nigbor's grant of immunity; his state conviction for the present transaction; his own private sales of cocaine; and the fact that he and Stehling had obtained a phone for the Tower Road house in a phoney name. Furthermore, defense counsel was able to introduce into evidence a notebook kept by Nigbor of drug transactions in which he engaged prior to his residence at Tower Road (thus, prior to his participation in the present conspiracy).

During the defense counsel's cross-examination of Brian Stehling, he asked Mr. Stehling how long he had known Mr. Nigbor; Brian replied that he had known him for some twelve years. Defense counsel also asked Stehling when he had started selling drugs to Mr. Nigbor; he replied that he had engaged in drug transactions with Nigbor in high school, long before he met Muelbl. He then queried how long Mr. Stehling had known Taylor; in response Stehling stated that he had known him for seven or eight years. Furthermore, defense counsel established that Stehling had drug dealings with Taylor that went back as far as he had known him and that the deals had been as large as $8,000 in cocaine in a single transaction..

Thus, the defense counsel was clearly allowed to introduce the evidence necessary to support the theory or scenario he intended to argue to the jury in order to establish Muelbl's purported defense. That defense counsel was able to adequately establish this defense is evidenced by his arguments to the jury, wherein he stated:

"The evidence shows that Brian Stehling, Michael Taylor and James Nigbor conspired together for a long time back to distribute drugs; that then Brian Stehling, James Nigbor moved into Tower Drive, the house on Tower Drive, after Joe Muelbl: Together, those two, that's what's consistent.

"The consistencies in this case are the dealings between Michael Taylor, Brian Stehling and Jim Nigbor. That's what's consistent. That's all that's consistent. Going back to the early 1970's. What did Brian Stehling say? Been dealing with Jim Nigbor way back. What did Jim Nigbor say? Been doing business with Brian Stehling way back. What did Michael Taylor say? Been doing business with the two of them way back. And then they move in together. And then what did Michael Taylor tell the State people before they went in and raided the house? Michael Taylor said, 'I have had all these dealings with Joe Muelbl; I had hand-to-hand buys with him after I was arrested.'"

Then somewhat later defense counsel argued:

"What we have, ladies and gentlemen, is a lot of people that worked together for a long period of time, drug dealings together for a long period of time; got caught. Jim Nigbor specifically was the one at the house, so he took the brunt of it, spent forty-five days in jail, and all of a sudden he's called to testify before a Grand Jury investigating the real Mr. Big, Allen Casey. All of a sudden, Joe Muelbl, these people have been together for years and are trying to tell you that just recently, just recently started dealing with Joe Muelbl and at the time all of this stuff got them in trouble happened, it was because of Joe Muelbl. It was Joe Muelbl's money, it was Joe Muelbl's drugs; that's what they are trying to tell you, these people that have been together forever."

It is apparent to this court that defense counsel was able to establish his defense, that is, the apparent motives and biases of

both Stehling and Nigbor, even over the limitations placed on his cross-examination. Under the test enunciated in *De Gudino*, we hold that the jury had more than "sufficient information to make a discriminating appraisal of" Stehling's and Nigbor's motives and biases and therefore find no violation of the defendant's Sixth Amendment right to confrontation.

The defendant's conviction is affirmed.