UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Ricardo NAVAR and Laura Katherine Navar, Defendants-Appellants.

No. 79–5247
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Ralph E. Harris, El Paso, Tex., for defendants-appellants.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, Chief Judge, HILL and GARZA, Circuit Judges.

PER CURIAM:

Appellants were charged in a five count indictment with violations of 21 U.S.C. §§ 841(a)(1) and 846. The counts charged conspiracy to possess heroin with the intent to distribute, possession of heroin with that intent, conspiracy to possess marijuana with the intent to distribute, and two counts of possession of marijuana with such an intent. Jose Ricardo "Rick" Navar was indicted on all counts, and his wife, Laura Katherine Rusk Navar, was indicted on all but the second, possession of heroin with the intent to distribute. Their jury trial resulted in conviction upon all counts charged.

The Navars contend that the record demonstrates that they were entrapped as a matter of law, and that the trial court erred in its admission of oral statements made by them which it did not disclose that it would use at trial, allegedly contravening Fed.R. Crim.P. 16(a)(1)(A). Mrs. Navar further contends that the evidence was insufficient to support her conviction for conspiracy to possess heroin. Finding no merit in the Appellants' arguments, we affirm.

The testimony at trial of undercover DEA Agent Baden revealed that he and Detective Weick were introduced to the Navars in a restaurant by a DEA informant on June 30, 1978, the purpose of the meeting being to arrange for a purchase of heroin from Rick Navar. The group went to Baden's motel room, where Rick Navar produced a price list for brown Mexican heroin. He discussed with Baden arrangements for procuring a sample ounce of the drug. Navar boasted that he was one of few people in El Paso who was capable of procuring quality heroin because of increased DEA presence in the city. Baden commented that perhaps the transaction should be postponed, and Navar responded, "the only people who know about this are you two, my wife, and the man I was just talking to on the telephone."

That evening Rick and Laura Navar, Baden and Weick met again in Baden's motel room. Baden again suggested delaying the transaction, and Laura Navar responded, "no, we are legitimate dealers, that is all right. There is no problem with us." She told Baden that the heroin was "good stuff." The group had difficulty with the logistics of the transaction, but it was finally settled that Baden would fly down from Minnesota several times to attempt the purchase.

On July 21, 1978, Baden met Rick Navar at the El Paso airport where, in a men's room, Navar handed Baden one ounce of heroin. Baden paid Navar $2,100 and the two discussed the purchase of six additional pounds of heroin. The larger transaction was never consummated.

Weick then telephoned Navar to discuss an additional drug transaction. On August 2, 1978, Rick and Laura met Weick at an El Paso restaurant where a one pound heroin purchase was discussed. Weick agreed, in order to provide Rick Navar with funds to purchase the heroin himself, to assist the Navars in selling 650 pounds of marijuana. He received a sample of that marijuana.

The Navars met Weick and DEA Agent Newkirk at the El Paso airport the following day and discussed the transaction. The

Navars, Weick, Newkirk and agent Spitzer then met by a rented truck containing the marijuana in a shopping center parking lot. When it was determined that the truck contained marijuana, Rick and Laura Navar were arrested.

The Navars contend that the trial court erred by denying their motion for judgment of acquittal, arguing that they were entrapped as a matter of law. They also urged that the conduct of the government informants was so outrageous that due process should bar their convictions.

■ We do not agree. The defense of entrapment exists when the criminal design originates with government officials or agents and they implant in the mind of an innocent person the disposition to commit the crime and induce its commission. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Wolffs*, 594 F.2d 77 (5 Cir. 1979). The defense is destroyed by the defendant's predisposition to commit a crime, regardless of the nature and extent of the government's involvement. *Russell*, 411 U.S. at 436, 93 S.Ct. 1637. Here, there was ample evidence of the Navars' predisposition. Rick Navar testified that he was one of the few people who knew the larger drug dealers in the El Paso area. He knew the prevailing prices for marijuana. Navar testified that he sold the heroin and marijuana in order to repay another person for her stolen car, but there is no evidence that that person was a government agent, and thus Navar's motives do not reduce his predisposition to sell drugs. Weick testified that Laura Navar participated in the negotiation, and even promised to obtain higher quality heroin for the next purchase. She had also inquired whether Weick was interested in purchasing cocaine. Thus, there was ample evidence from which the jury could conclude beyond a reasonable doubt that the Navars were predisposed to deal in drugs. The conduct of the government agents and informants was not nearly so outrageous as to bar the Navar's convictions for their offenses.

■ The Navars further allege that under Fed.R.Crim.P. 16(a)(1)(A) the government should have disclosed to them that it would use certain oral statements they had made at trial. The first statements were contained in agent Baden's testimony where he recited that Laura Navar suggested persons for her husband to call in order to locate heroin, and stated "No, we are legitimate dealers, this is all right. There is no problem with us." And when she said, referring to the heroin, "It's good stuff." Obviously, at the time she made these statements Laura Navar did not know that Baden was a government agent. As the rule in question specifically refers to comments made by a defendant "in response to interrogation by any person then known to the defendant to be a government agent," Laura Navar's statements do not come within the range of the rule. *See United States v. Green*, 548 F.2d 1261 (6 Cir. 1977); *United States v. Martinez*, 577 F.2d 960 (5 Cir. 1978).

■ The other statement was contained in the testimony of DEA agent Spitzer, who testified that shortly after arrest Navar said to him, "Well, Dick, I want you to know I don't have any hard feelings toward you because you caught me fair and square." This remark was made to a person known by the declarant to be a government agent, but it was voluntary, spontaneous, and not in response to interrogation, and thus did not come within Fed.R.Crim.P. 16(a)(1)(A). *See United States v. Martinez*, supra; *United States v. Johnson*, 562 F.2d 515 (8 Cir. 1977). We find no error in the admission of these statements.

■ Finally, Laura Navar contends that the evidence was insufficient to sustain her conviction under the heroin conspiracy count. Because she properly moved for judgment of acquittal, the test for the sufficiency of the evidence is whether, in the light most favorable to the government, a reasonable man might find the evidence inconsistent with every reasonable hypothesis of innocence. *United States v. Wilkin-*

*son*, 601 F.2d 791 (5 Cir. 1979). For an accused to be convicted of conspiracy under 21 U.S.C. § 846, there must be proof beyond a reasonable doubt that conspiracy existed, and that the accused knew of it, and with that knowledge, voluntarily became a part of it. *United States v. Harbin*, 601 F.2d 773 (5 Cir. 1979). Here, the testimony of agent Baden established that Laura Navar was an active participant in the conspiracy to distribute heroin despite her absence at the actual transaction. The evidence was sufficient to sustain her conviction on count one.

AFFIRMED.