UNITED STATES of America, Plaintiff-Appellee,

v.

Richard VON STOLL, Defendant-Appellant.

No. 83–1144.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1983.

Decided Feb. 24, 1984.

As Amended March 20, 1984.

Fred Morrison, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Sandra Gillies, Asst. Federal Defender, Sacramento, Cal., for defendant-appellant.

Before WRIGHT, CHOY and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Von Stoll was convicted of two violations of 18 U.S.C. § 2314 and two of 18 U.S.C. § 1343. There are two major issues: (1) whether the conviction on Count I should be reversed because the indictment charged that Von Stoll took $10,000 from one person, while the proof showed that he took it from that person's business partner; and (2) whether the conviction on Count III should be reversed because it was based on Von Stoll's confession without adequate corroborating evidence.

FACTS

Von Stoll's convictions arose from his involvement in an advance fee scheme. He communicated with persons who needed loans and promised funds from a nonexistent family trust, collected an advance fee, and absconded with the money.

Count I of the indictment charged Von Stoll with transporting in interstate commerce $10,000 that was taken by fraud from Ron McCallum. The proof showed that McCallum and his business partner,

Helmut Hofer, met Von Stoll in the Grand Cayman Islands. They discussed a possible loan, but did not pay Von Stoll an advance fee. Later, Hofer met with Von Stoll and gave him $10,000. The trial judge's instructions allowed the jury to find Von Stoll guilty on Count I if it found that the $10,000 was taken from "the owner."

Count III charged Von Stoll with inducing Robert Chester to travel to Sacramento to defraud him of $10,000. The proof of this charge came largely from confessions that Von Stoll gave the FBI. The government corroborated the confessions with proof that Chester met earlier with Von Stoll and with proof of a payment order for $10,000 issued by a San Francisco bank on October 26, 1981.

A jury found Von Stoll guilty on all counts. He was sentenced to five years each on Counts I, II, and III, with the sentences to run concurrently. He was given a suspended sentence and probation on Count IV.

## ANALYSIS

### A. *The Inconsistency Between the Indictment and the Proof as to Count I*

■ Von Stoll urges a reversal on Count I because the indictment charged him with transporting money taken from McCallum and the proof showed it was taken from Hofer, McCallum's partner. He argues that this constructively amended the indictment, requiring reversal. *See Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Miller,* 715 F.2d 1360 (9th Cir.1983).

We disagree. Von Stoll cites cases that are inapplicable because they involved an *amendment* of the indictment, not a simple *variance* between the facts charged and those proved.

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial

proves facts materially different from those alleged in the indictment.

*United States v. Cusmano,* 659 F.2d 714, 718 (6th Cir.1981) (emphasis in original); (quoting *Gaither v. United States,* 413 F.2d 1061, 1071 (D.C.Cir.1969)).

The cases have found a constructive amendment where there is a "complex of facts distinctly different from those set forth in the charging instrument and not ... where there is a single set of facts." C. Wright, *Federal Practice and Procedure,* Crim.2d, § 516 at 27 (1982). *See United States v. Knuckles,* 581 F.2d 305, 312 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *Jackson v. United States,* 359 F.2d 260, 263 (D.C.Cir.), *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966). Here, there is but one set of facts with a single divergence: the identity of the person that Von Stoll defrauded.

In addition, courts have found constructive amendments where the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.

In *Stirone,* the indictment alleged that the defendant had obstructed interstate shipments of sand *to* a site where a steel mill was under construction. The proof tended to show only that the defendant had obstructed *prospective* shipments of steel *from* the mill. 361 U.S. at 213–14, 80 S.Ct. at 271.

The *Stirone* Court thought it a difficult question "whether prospective steel shipments from the new steel mills would be enough, alone, to bring the transaction under the [Hobbs] Act." *Id.* at 215, 80 S.Ct. at 272. It avoided the question because it found no evidence that the grand jury would have "included in its indictment a charge that commerce in steel from a non-existent steel mill had been interfered with." *Id.* at 219, 80 S.Ct. at 274. *See also Ex parte Bain,* 121 U.S. 1, 13, 7 S.Ct. 781, 787, 30 L.Ed. 849 (1887) (error to amend defective indictment so it stated crime); *United States v. Mastelotto,* 717 F.2d 1238,

1251 (9th Cir.1983) (instructions defective because they allowed conviction for a crime for which defendants would not have been indicted); *United States v. Miller,* 715 F.2d at 1363 (constructive amendment found because grand jury may not have returned indictment for the narrower charge proved at trial).

Here, the divergence between the indictment and proof did not affect the sufficiency of the complaint or alter the crime charged. It did not constitute a constructive amendment.

"A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties." *United States v. Kaiser,* 660 F.2d 724, 730 (9th Cir.), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1981). We are unable to see how this variance affected Von Stoll's substantial rights. The only inconsistency is that the indictment specified that Von Stoll took the money from one partner, while the proof showed he got it from the other. The identity of the defrauded person is irrelevant to a conviction under 18 U.S.C. § 2314. The inconsistency did not affect any substantial rights of the defendant. *See United States v. Heimann,* 705 F.2d 662 (2d Cir.1983); *United States v. Kartman,* 417 F.2d 893 (9th Cir.1969). We find no constitutional error.

### B. *Corroboration of the Evidence on Count III*

Von Stoll argues that Count III must be reversed because the only evidence that he induced Chester to travel to Sacramento came from Von Stoll's confessions to the FBI. He asserts that the government failed to corroborate the confessions. *See Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

■ While "a confession must be corroborated by independent evidence, the corroboration need not independently establish any element beyond a reasonable doubt, but must merely fortif[y] the truth of the confession." *United States v. Lopez-Garcia,* 683 F.2d 1226, 1228 (9th Cir.1982) (quoting

*United States v. DeGeorgia,* 420 F.2d 889, 890 n. 3 (9th Cir.1969)).

■ The primary evidence on Count III came from confessions that Von Stoll made to the FBI on January 14 and 15, 1982. Portions of the confessions were reduced to writing in the government's Exhibit 15. The rest was introduced through the testimony of Agent Biniek. Von Stoll was advised of his rights and disclaimed any duress.

Von Stoll said that he met Robert Chester in the Grand Cayman Islands in October 1981. Nova, another victim of the advance fee scheme, corroborated that statement.

Von Stoll confessed that Chester transferred $10,000 to him at the Crocker Bank in San Francisco. The government produced a record of a transfer of that amount from Michael Chester to Von Stoll at that bank on October 26, 1981. George Miller testified that he accompanied Von Stoll to the same bank on October 26, and saw him receive a wire transfer for $10,000.

The confessions also described the advance fee scheme in detail and described Von Stoll's dealings with Nova and McCallum on the Grand Cayman Islands. The testimony of Nova and Hofer, McCallum's business partner, thoroughly corroborated the confessions.

All of this evidence suffices "to establish that the self-incriminating declarations are trustworthy." *United States v. Allen,* 455 F.2d 509 (9th Cir.1972). The lack of corroboration for the specific element that Von Stoll induced Chester to travel to Sacramento does not invalidate the conviction on Count III because the government produced sufficient evidence to support the truth of the confessions as a whole. *See Id.; United States v. Lopez-Garcia,* 683 F.2d at 1228.

### C. *Other Contentions*

Von Stoll makes two contentions that do not warrant extensive discussion.

■ (1) The government did not violate Fed.R.Crim.P. 16(a)(1)(A) by failing to inform Von Stoll of oral statements made by him to IRS Agent Beyer. The rule is spe-

cifically limited to statements made by a defendant "in response to interrogation." Von Stoll initiated the conversation with Beyer and his comments do not fall within the rule. *See United States v. Navar,* 611 F.2d 1156, 1158 (5th Cir.1980); *United States v. Johnson,* 562 F.2d 515, 518 (8th Cir.1977).

Because Von Stoll's statements were voluntary and not in response to interrogation, we need not decide whether he was prejudiced by the failure to disclose them. *See United States v. Bailleaux,* 685 F.2d 1105, 1115 (9th Cir.1982).

■ (2) The evidence was sufficient to convict Von Stoll on all counts. *See United States v. Kaiser,* 660 F.2d 724, 730 (9th Cir.1981), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1982).

CONCLUSION

The divergence between the indictment and the proof on Count I did not constitute a constructive amendment of the indictment and did not affect Von Stoll's substantial rights. His confession on Count III was corroborated adequately by the supporting evidence. His other contentions lack merit.

AFFIRMED.

POOLE, Circuit Judge, concurring and dissenting.

I concur in the majority's rulings sustaining the convictions under Counts II and IV of the indictment, but disagree with the rulings affirming the convictions under Counts I and III of the indictment.

Von Stoll was convicted on four counts related to schemes fashioned by him to defraud. The majority has affirmed all four convictions. This is wrong as to Count I because there was a clear variance between the charge of the indictment and the proof at trial which prejudiced the defendant, and the proof as to Count III was insufficient as a matter of law because the only evidence, Von Stoll's confession, was entirely lacking in corroboration.

THE INDICTMENT AND SENTENCES

Count I alleged that Von Stoll concocted a scheme by which he would fraudulently represent that he had family trust money available for loans in order to enable him to obtain advance fees from such would-be borrowers; and that between October 22 and 24, 1981, in the execution of the fraud, he "did knowingly and willfully, [sic] transport in interstate and foreign commerce * * $10,000, knowing the same to have been taken by fraud from Ron McCallum," in violation of 18 U.S.C. § 2314. The jury convicted Von Stoll of taking money from a man named Helmut Hofer.

Count II alleged that, in execution of his scheme, Von Stoll transmitted a wire communication (telephone call) between Sacramento, California, and New York State, in violation of 18 U.S.C. § 1343.

Count III alleged that on and between November 24 and November 27, 1981, in execution of his scheme, Von Stoll induced Robert Chester to travel in interstate commerce (to Sacramento), in violation of 18 U.S.C. § 2314.

Count IV alleged that on or about December 14, 1981, in execution of his scheme, Von Stoll transmitted a wire communication (telegram) to Edward Nuno, Jr., in New York, in violation of 18 U.S.C. § 1343 (incorrectly stated in the indictment as § 2314).

The trial court sentenced Von Stoll to five years in prison on each of Counts I, II, and III, running concurrently. The court suspended imposition of sentence on Count IV and placed him on probation for five years.

This might have been an appropriate case for applying the concurrent sentence doctrine under which an appellate court may decline to review a conviction under one count when it has affirmed a conviction under another count and no adverse collateral legal consequences result from the failure to disturb the unreviewed conviction. *See e.g., United States v. Barker,* 675 F.2d 1055, 1059 (9th Cir.1982). Had the majority applied that doctrine, it might have avoided

having to prop up the convictions in Counts I and III by a reasoning process which is incompatible with logic, opposed to precedent, and patently contrary to the record in this case.

Since the majority has instead chosen to put its gloss of approval on these two improper convictions, I must part company and now set forth my reasons for doing so.

COUNT I

The record is very clear that Von Stoll went to the Grand Caymans and there engaged in two separate schemes involving Hofer and McCallum. In one, Von Stoll negotiated a 1.2 million dollar loan with McCallum and Hofer for financing the purchase of equipment for a recording studio which they operated as partners. This took place on the morning of October 21, in the presence of Hofer, McCallum, and De-Freeze, their attorney. No money passed at that time. Because of Von Stoll's indisposition, the deal was put over to the following morning when they shook hands to seal the bargain.

Meanwhile, Von Stoll privately asked Hofer to meet with him alone, on the morning of October 22, to discuss an "additional loan" of $1.5 million for the production of films. This was a separate transaction in which no participation by McCallum or the partnership was indicated. Von Stoll drew up a contract between himself and Hofer, alone, which provided,

I cannot emphasize enough that at all times you [Hofer] will be relied upon to oversee all expenditures.

Pursuant to this arrangement, Hofer paid Von Stoll $10,000 from Hofer's own personal account. He treated this transaction as his sole responsibility. When asked at the trial to explain whose funds were involved, he answered:

A. (By Mr. Morrison [Assistant United States Attorney]): And the $10,000 that you paid, was that to be an obligation of the partnership? Objection.

\* \* \* \* \* \*

Q. (By Mr. Morrison): Would the partnership then ultimately be liable for the $10,000 that you gave Mr. Von Stoll to get the second loan of 1.5 million?

A. In the first instance, the loss is mine. I have not tried to collect the money from the partnership.

Q. Had you received the loan and the loan gone to the partnership, would the $10,000 then come from the partnership?

A. Yes, sir.

The foregoing constitutes the evidence identifying the person defrauded. Whether Hofer might later have recouped his $10,000 out of the $1.5 million loan, had it been obtained, does not change the fact that at that time the funds were Hofer's, not McCallum's, nor the partnership's. The majority unfortunately has left an unfounded impression in its language ("[T]he proof showed it was taken from Hofer, McCallum's partner."). Maj. Op. at 586. While the quoted language does not explicitly state that the money was partnership money, and hence could technically be said to belong to McCallum as well as to Hofer, such is its unqualified inference and that inference is simply contrary to the testimony.

The majority opinion is also incorrect in its effort to distinguish this case from the principle enunciated in *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). What the majority opinion describes as a "simple" variance in fact is a major defect in the proof. The contention that this case presents "but one set of facts with a single divergence: the identity of the person \* \* \* defrauded," Maj. op. at 586, is unfounded. Hofer's $1.5 million transaction was wholly different from the $1.2 million deal in which all the parties had participated. The majority's purported distinction of *Stirone* betrays a regrettable misconception of both fact and law.

Nor can I agree with the conclusion that the failure to try Von Stoll only on the charge presented in the indictment was not prejudicial. *See United States v. Cruikshank,* 92 U.S. 542, 558, 23 L.Ed. 588 (1876); *United States v. Buckner,* 610 F.2d 570, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980). The majority's rationale is premised on the theory that the name of the defrauded person need not be pleaded in order to state an offense.

While an indictment charging interstate or foreign transportation of money taken by fraud may be sufficient, in a proper case, without naming the person defrauded, that is so only when the fraudulent transaction is, by time, place, circumstances, or other details, fairly implicated so that notice is reasonably imported. This would be true where only a single nucleus of facts is established. But where the allegations focus on one of several distinct transactions and charge specified conduct as the offense, it will not do to adduce at trial other, uncharged, fraudulent conduct. That is what the Supreme Court has told us in *Stirone*:

> [However,] when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though ... under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.

*Stirone*, 361 U.S. at 218, 80 S.Ct. at 274.

This sensible rule requires that the proof adhere to the grand jury's indictment and that fair notice of the conduct in suit be given to the accused so that he may defend, and so that he cannot again be tried for the same conduct. Neither requirement was met here. Von Stoll's conviction could not rest on the proof which the Government presented.[1]

## COUNT III

Count III charged that, having devised a scheme to defraud, and in furtherance of that scheme, Von Stoll induced Robert Chester to travel to Sacramento. Government Agent Biniek testified that on two separate occasions Von Stoll admitted to him that he had caused Chester to come to Sacramento and stay at the Red Lion Inn. Chester did not testify, and no documentation whatsoever established that he had in fact done the travel claimed.

As "independent corroboration," the Government offered the facts that Chester had been in the Grand Caymans, had met with Von Stoll (both facts independently established), and there was in evidence a $10,000 payment order issued by a San Francisco bank. From this sparse presentation, the majority finds corroboration. That is patently unsound. The payment order corroborates nothing. It was not drawn in California, but was cabled to the San Francisco bank from Canada. It does not purport to show anyone's travel to Sacramento—or to any other place. No one ever put Chester in Sacramento. There is simply no testimony, no evidence, and no reasonable inferences showing any travel by Chester at or near the times alleged, let alone any induced by Von Stoll.

The majority, after summarizing the scant evidence purporting to support Count III, and recounting the unenlightening facts which took place in the Caymans, has concluded: "All of this evidence suffices 'to establish that the self incriminating declarations are trustworthy.'" (Citing *United States v. Allen*, 455 F.2d 509 (9th Cir. 1972)). Conceding that none of that evidence showed any travel by Chester, the majority says: "[t]he lack of corroboration for the specific element that Von Stoll induced Chester to travel to Sacramento does not invalidate the conviction on Count III because the Government produced sufficient evidence to support the truth of the confessions as a whole."

This statement suggests that if independent evidence is sufficient to corroborate a confession in *some* particulars, as to some claims, it is not necessary that an entirely separate claim be separately supported. This incorrect statement is not and never has been the law. The truth is that Count III ought not have to have been allowed to go to the jury and we have no business upholding that conviction on this appeal.

The majority seems not to have realized that none of the facts of Count III were set forth in Von Stoll's written confessions, but came solely from Agent Biniek's testimony

---

1. The analysis here does not rely upon *United States v. Mastelotto*, 717 F.2d 1238 (9th Cir. 1983), and *United States v. Miller*, 715 F.2d 1360, 1363 (9th Cir.1983). Those cases hold that there is an impermissible variance if the defendant is convicted on a scheme *narrower* than that presented in the indictment if it is not clear that the grand jury would have returned an indictment on the narrower ground. I believe their reasoning to be unsound and do not incorporate or embrace it herein.

of Von Stoll's oral statements to him. There were not, as the majority claims, "many witnesses," no corroboration of Count III "extensively," or in any respect. Count III should never have been allowed to get to the jury, and we should not uphold it on this appeal.

The sad fact is that the prosecution seems to have been unprepared to put its case together. We do not know on any first-hand basis what McCallum told the prosecution, or what facts were available to the grand jury. We do know that neither McCallum nor Chester appeared at trial. At oral argument Government counsel suggested that trial calendar problems might have handicapped preparation which a continuance might have averted. That may tend to explain the glaring deficiencies of this case. But whatever the reason, one is left with the unhappy feeling that, at least on Counts I and III, even a confessed swindler was entitled to fare better in a court of law.