958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie STEWART, Sr., Defendant-Appellant.
 No. 90-30382.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 13, 1992.*
Decided March 18, 1992.
 
 Before JAMES R. BROWNING, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Willie Stewart, Sr., appeals his conviction following a jury trial for conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 371, 1344, bank fraud, in violation of 18 U.S.C. § 1344, and knowingly making a false statement in a bank loan application, in violation of 18 U.S.C. § 1014. Stewart contends that the evidence was insufficient to support his convictions. He also contends that the district court erred by denying his motion for new trial based on (1) a prejudicial variance between the indictment and proof presented at trial and (2) an improper denial of his discovery request. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 I. Sufficiency of the Evidence
 
 3
 Stewart contends that the evidence was insufficient for the jury to find him guilty of conspiracy to commit bank fraud, bank fraud and making a false statement on a bank loan application. This argument lacks merit.
 
 
 4
 We review the sufficiency of evidence to determine whether any rational jury, after viewing the evidence in the light most favorable to the government, " 'could have found the elements of the crime beyond a reasonable doubt.' " United States v. Castro, 887 F.2d 988, 994 (9th Cir.1989) (quoting United States v. Feldman, 853 F.2d 648, 654 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989)).
 
 
 5
 To prove a conspiracy, the government must show " 'an agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.' " Castro, 887 F.2d at 994 (quoting United States v. Melchor-Lopez, 627 F.2d 886, 890 (9th Cir.1980)). The agreement can be inferred from the facts and circumstances of the case. Id. To prove bank fraud, the government must show "that the defendant knowingly (1) engaged in a scheme to defraud a federally chartered or insured financial institution, or (2) participated in a scheme to obtain money under custody or control of a federally chartered or insured financial institution by means of material, false statements or representations." United States v. Cloud, 872 F.2d 846, 850 (9th Cir.), cert. denied, 493 U.S. 1002 (1989). To prove the submission of a false loan application, the government must show that the defendant knowingly made a false statement about a material fact to a bank in order to influence the bank's actions. United States v. Bonnette, 663 F.2d 495, 497 (9th Cir.1981), cert. denied, 455 U.S. 981 (1982); see also Theron v. United States Marshall, 832 F.2d 492, 496 (9th Cir.1987), cert. denied, 486 U.S. 1059 (1988).
 
 
 6
 Here, Stewart served as the Chairman of the Crow Tribal Land Resources Committee ("Land Committee"), which purchased and disposed of trust land within the reservation. In May 1986, Stewart's codefendant, Theodore Hogan, negotiated a land sale contract between himself and the Land Committee for property he owned but on which the Little Horn State Bank ("Little Horn") had begun foreclosure proceedings. Stewart signed the agreement, which was conditionally approved by the Bureau of Indian Affairs ("BIA").[1] Hogan used this agreement as leverage to avert the foreclosure proceedings on the property begun by the Little Horn. The Land Committee defaulted on its payments to Hogan due to lack of funds. In March 1987, Little Horn foreclosed on Hogan's property and assumed ownership because he could not meet his payment obligations.
 
 
 7
 In May 1987, Hogan's mother obtained a loan from the Billings Federal Credit Union ("Billings Federal") based on representations by Hogan that he would be receiving proceeds from a land sale.[2] Stewart, in his official capacity as Chairman of the Land Committee, wrote a letter to Billings Federal stating that Hogan would be receiving funds from the proceeds of the sale of property, but not informing the bank that Little Horn had already foreclosed on that property. In December 1987, Hogan obtained a loan from the First Citizen's Bank ("First Citizen") based on a letter written by Stewart, also in his official capacity, to the bank. Stewart assured First Citizen that Hogan would be receiving money from the Land Committee. In December 1988, Hogan obtained another loan from Little Horn based on a new letter by Stewart, again in his official capacity, stating that the Land Committee owed Hogan a substantial amount of money.
 
 
 8
 At trial, the government introduced the testimony of BIA Realty Specialist Madison. Madison testified that, in February 1987, he wrote and sent a memorandum to Stewart concerning over 600 land purchases approved by the Land Committee. Madison testified that in the memorandum he explained that there were no funds available to consummate the deals. Madison further testified that he personally spoke with Stewart and expressed these concerns.
 
 
 9
 Because Stewart and Hogan knew that information in the loan applications were false, there was sufficient evidence from which the jury could conclude that (1) Stewart and Hogan had agreed to defraud the banks by making false statements, see Castro, 887 F.2d at 988, (2) Stewart affirmatively assisted in the execution of Hogan's fraudulent scheme to obtain the bank funds, see Cloud, 872 F.2d at 846, and (3) Stewart knowingly made the false representations to influence the bank's decisions, see Bonnette, 663 F.2d at 497-498. In light of this evidence, we hold that a rational trier of fact could have found that Stewart conspired to commit bank fraud, committed bank fraud and knowingly made false statements on a bank loan application. See id.; Castro, 887 F.2d at 988; Cloud, 872 F.2d at 846.
 
 II. Motion for a New Trial
 
 10
 Stewart argues that the district judge erred on two grounds by denying his motion for a new trial. First, Stewart contends that the prosecution's evidence at trial prejudicially varied from the indictment. Second, he contends that the district court improperly denied his discovery request.
 
 
 11
 We review for abuse of discretion a district court's denial of a motion for a new trial. Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir.), cert. denied, 112 S.Ct. 65 (1991). A district court may grant a motion for new trial "if required in the interests of justice." Fed.R.Crim.P. 33.
 
 A. Variance
 
 12
 A variance from the indictment occurs when the prosecution's evidence proves facts different from those alleged in the indictment. United States v. Olson, 925 F.2d 1170, 1175 (9th Cir.1991). " 'A variance requires reversal only if it prejudices a defendant's substantial rights.' " See Olson, 925 F.2d at 1175 (quoting United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984)).[3]
 
 
 13
 Here, our review of the trial record generally supports Stewart's position. The indictment charged Stewart with misrepresenting the validity of the land sale contract by claiming the contract was valid, even though the property was in foreclosure at the time the loan application was made. The prosecution's trial theory, however, was that the conspirators all knew that the Land Committee would never pay on the contract with Hogan, and that the contract only existed to facilitate the acquisition of bank loans for the conspirators' personal benefit. The prosecution's proof was primarily limited to the fact that the Crow Tribe had no money for purchase of land, and the resulting implication that the conspirators knew this. We find, therefore, that some variance occurred. See Von Stoll, 726 F.2d at 586-587.
 
 
 14
 Nevertheless, our inquiry is whether that variance affected Stewart's "substantial rights." See id. at 587. We are convinced that it did not. The indictment generally put Stewart on notice that he was accused of misrepresenting the validity of the land sale contract to the banks. The indictment sufficiently informed Stewart of all necessary elements of the crimes, and the prosecution's trial proof was incorporated within these elements. The prosecution's trial proof essentially constituted an alternate theory, which Stewart should have been prepared to meet in light of the indictment. Therefore, we hold that the variance was not substantial enough to deprive Stewart of a fair trial. See id. Thus, the district court did not abuse its discretion in denying the motion for new trial on this basis. See Mateyko, 924 F.2d at 828; see also Fed.R.Crim.P. 33.
 
 B. Denial of Discovery
 
 15
 Stewart also contends that he was entitled to a new trial because the district court improperly denied his discovery request regarding BIA documents and Crow Tribe financial records.
 
 
 16
 We review for abuse of discretion a district court's denial of a motion for discovery. Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir.1988).
 
 
 17
 Denial of a motion to compel discovery is proper if the evidence sought is irrelevant or a sweeping request for production of documents. See United States v. Merrill, 746 F.2d 458, 465 (9th Cir.1984), cert. denied, 469 U.S. 1165 (1985).
 
 
 18
 Here, Stewart requested the production of BIA records and Crow Tribe financial data related to an alleged abuse of the trust relationship between BIA and the Crow Tribe. Stewart claimed that these documents were relevant and necessary to his defense. Given the general nature of Stewart's discovery request, it is not evident that granting the request would have aided materially Stewart's defense.[4] Therefore, we find that the district court did not abuse its discretion by denying the discovery motion, see id., nor by denying the motion for new trial on this basis, see Mateyko, 924 F.2d at 828; see also Fed.R.Crim.P. 33.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, we deny Stewart's request for oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The BIA's approval was contingent upon the Land Committee's availability of funds to satisfy the contract
 
 
 [2]
 Although Hogan initially sought the loan, his mother obtained the loan in her name because she was a member of Billings Federal and Hogan was not
 
 
 [3]
 A variance is distinguished from a "constructive amendment" of the indictment. A constructive amendment occurs " 'when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court....' " Von Stoll, 726 F.2d at 586 (quoting United States v. Cusmano, 659 F.2d 714, 718 (6th Cir.1981)). A constructive amendment always requires reversal. Olson, 925 F.2d at 1175
 
 
 [4]
 Stewart did not avail himself of the opportunity to file a motion to reconsider the ruling with a specific and properly tailored request for documents