962 F.2d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff,-Appellee,
v.
Joseph WASHINGTON, Defendant.-Appellant,
 No. 90-10420.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1991.
Decided April 23, 1992.
 
 1
 Before CANBY and KOZINSKI, Circuit Judges, and CARROLL*, District Judge
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Appellant Joseph Washington and co-defendants Marvin Perkins and Danilo Frias were indicated and charged with having embezzled, stolen and converted property valued at more than $5,000 from Bay Area Rapid Transit (BART) in violation of 18 U.S.C. § 666, and of having conspired to do so, in violation of 18 U.S.C. §§ 371 and 666. Both Frias and Perkins pleaded guilty, and a jury convicted defendant Washington of both counts on April 24, 1990. Washington now appeals, claiming that the trial court constructively amended the indictment and failed to properly instruct the jury on an essential element of the charged offenses.
 
 
 4
 This Court has jurisdiction under 28 U.S.C. § 1291.
 
 FACTS
 
 5
 Appellant Joseph Washington worked for Bay Area Rapid Transit (BART) as an automatic fare collection technician since 1976. Washington repaired the fare equipment used by the public to purchase tickets for BART subway trains. An automated fare technician does not sell tickets to the public.
 
 
 6
 BART tickets purchased through a fare machine are blank before purchase. After purchase the "revenue" tickets are encoded with a value and the location of purchase. Appellant was permitted under some circumstances to possess and use blank and encoded BART tickets due to his job duties.
 
 
 7
 Responding to reports that an employee at the Bank of America in Concord, California was selling stolen BART tickets at a discount, the FBI placed an undercover agent, Elizabeth Castenada, to pose as an employee. In September of 1989, Castenada bought ten $20 BART tickets for $15 apiece from fellow employee Frias. On October 4, 1989, Frias told Castenada that he would be getting more tickets that night. Castenada notified FBI and BART agents.
 
 
 8
 The agents followed Frias from his home to the home of co-defendant Marvin Perkins. Perkins and Frias drove to the El Cerrito Bart station, and Perkins went inside alone. Minutes later, Perkins emerged from the station and the two men drove away. They were arrested shortly thereafter; the police searched Perkins and found 331 BART tickets each encoded and printed with a $20 value.
 
 
 9
 Neither Frias nor the agents knew who Perkins met inside the station. The appellant was stationed at the El Cerrito Plaza station that night but was called upon to report to other stations. FBI agents interviewed appellant later that night at the Berkeley BART station. Washington initially maintained that he sold the tickets to Perkins for full price. The FBI searched Washington's van and found $3,600 and 63 BART tickets, each worth $20. A search of the appellant's locker at work produced approximately 1300 blank BART tickets.
 
 
 10
 Illegal tickets can be produced in several ways. First, a "test bench", or a work area with different BART machines used to train personnel and to test BART equipment, can be altered to produce revenue tickets. Using this illegal method, an altered machine could produce 45 to 50 tickets a minute. BART operated a test bench at its engineering building in Oakland and two BART facilities in Hayward in 1989. From 1974 to 1980, there was another test bench in the Ashby BART station; this was removed in 1980.
 
 
 11
 Second, BART fare machines contain a "verifier" which reads the tickets being purchased to determine if the tickets have been properly encoded. If the fare machine is re-wired to disconnect the verifier, the machine will discard the ticket and return the money to the purchaser. Although a ticket produced by this method would have a value encoded on the ticket's magnetic strip, it would not have a value printed on the ticket. This method could produce 2 or 3 tickets per minute.
 
 
 12
 Third, the fare machine holds any money deposited in the machine "in escrow" while the customer selects the value of the ticket to be purchased. If the escrow function is rewired, the machine will return both a ticket and the money deposited. However, the ongoing audits of the fare machines would show a discrepancy between the value of tickets sold and the amount of money in the machine.
 
 
 13
 When questioned further by the FBI regarding how he had produced the tickets, Washington demonstrated how to rewire the escrow function and obtain a $20 ticket. Washington stated this method produced five or six tickets per night. Washington also told the FBI that between 1980 and 1988 he had encoded 3000 BART tickets on the "test bench" at the Ashby station,[1] and had used these tickets as a supply which he would replenish with the five or six produced each night on the ordinary fare machines.
 
 STANDARD OF REVIEW
 
 14
 When an appellant does not object at trial to the jury instructions now contested, this Court's review is limited to determining whether the instruction amounted to plain error. Fed.R.Crim.P. Rule 52(b); United States v. Olson, 925 F.2d 1170, 1174 (9th Cir.1991) (appellant complained that jury instructions amended the indictment); United States v. Power, 881 F.2d 733, 735 (9th Cir.1989). " 'Plain error' will be found only if the error was 'highly prejudicial' and there was a 'high probability that the error materially affected the verdict.' " United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989) (quoting United States v. Bryan, 868 F.2d 1032, 1038-39 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989). Reversal of a criminal conviction on the basis of plain error is an exceptional remedy invoked "only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986).
 
 DISCUSSION
 1. Constructive amendment
 
 15
 Washington contends that the jury instructions constructively amended the indictment by failing to limit the scope of the conspiracy to co-defendants Washington, Frias and Perkins.
 
 Count I and II of the indictment charged:
 
 16
 Beginning on a date unknown to the Grand Jury but no later than October 4, 1989 in the State and Northern District of California and elsewhere, JOSEPH WASHINGTON, MARVIN L. PERKINS, DANILO T. FRIAS defendants herein, did knowingly embezzle, steal and convert to their own use and the use of others property belonging to and in the care, custody and control of BART to wit: BART fare tickets valued at more than $5,000; in violation of Title 18, United States Code, Section 666.
 
 
 17
 Beginning on or about a date unknown up to and including October 4, 1989, in the State and Northern District of California, JOSEPH WASHINGTON, MARVIN L. PERKINS, DANILO T. FRIAS defendants herein, did conspire and agree knowingly to embezzle, steal and convert to their own use and the use of other property belonging to and in the care, custody and control of BART to wit: BART fare tickets having a value of more than $5,000.
 
 
 18
 The trial court gave the following conspiracy instructions, among others:
 
 
 19
 In order for the defendant to be found guilty of [conspiracy], the government must prove each of the following elements beyond a reasonable doubt:
 
 
 20
 First, starting sometime before October 4th, 1989, up to and including October 4th, 1989, there was an agreement between defendant Joseph Washington and either Marvin Perkins or Danilo Frias or both to commit a crime as charged in the indictment.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 If you find the defendant was not a member of the charged conspiracy, then you must find that defendant not guilty even though that defendant may have been a member of some other conspiracy.
 
 
 24
 Specifically, Washington challenges the following jury instructions:
 
 
 25
 Once you have decided that the defendant was a member of a conspiracy, the defendant is responsible for what other conspirators said or did to carry out the conspiracy, whether or not the defendant knew what they said or did.
 
 
 26
 Even though the defendant did not directly conspire with another defendant, such as Danilo Frias, in the overall scheme, the defendant would, in effect, have agreed to participate in the conspiracy if it is proved beyond a reasonable doubt that[:]
 
 
 27
 one[,] the defendants [sic] directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy.
 
 
 28
 two[,] the defendant had reason to know that other conspirators were involved with those with whom the defendant directly conspired.
 
 
 29
 and, three[,] the defendant had reason to believe that whatever benefits the defendants [sic] might get from the conspiracy were probably dependant upon the success of the entire venture.
 
 
 30
 (Emphasis added).
 
 
 31
 Appellee argues that the "invited error" doctrine precludes the review for error, contending that the defendant proposed the instructions challenged. United States v. Alexander, 695 F.2d 398, 402 (9th Cir.1982), cert. denied, 462 U.S. 1108, 103 S.Ct. 2458, 77 S.Ct. 1337 (1983); United States v. Smith, 891 F.2d 703, 709-10 (9th Cir.1989), amended, 906 F.2d 385 (9th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).
 
 
 32
 The trial court initially proposed a version of the conspiracy instruction; the defendant objected that there was no multiple conspiracy instruction, and the trial court acquiesced to its inclusion. Although the court therefore added a portion of the conspiracy instruction pursuant to defendant's request, the specific challenged instructions were proposed by the court. The "invited error" doctrine is therefore inapplicable.[2]
 
 
 33
 Further, the mere failure of the defendant to point out the constitutional error is not the equivalent of "inviting" the error. See United States v. Solis, 841 F.2d 307, 309 (9th Cir.1988) ("constitutional error was not waived by the failure to point it out to the court").
 
 
 34
 The appellant contends the court erred by failing to limit "conspiracy", "one or more conspirators", and "other conspirators" (underlined above), to those conspirators actually named in the indictment. Appellant argues that the instructions allowed the jury to find him guilty of conspiracy if he conspired with any conspirator to commit the charged offense, without regard to whether that conspirator was Frias or Perkins. Further, the appellant argues that the instructions allowed the jury to find appellant guilty of the substantive offense if any conspirator committed that offense. Appellant claims that the instructions were particularly harmful because defense counsel stressed in his closing argument that appellant was only guilty if the government proved the conspiracy consisted of only the three named individuals in the indictment.
 
 
 35
 The grand jury clause of the Fifth Amendment guarantees a defendant the right to be tried only on the grand jury's indictment. United States v. Miller, 471 U.S. 130, 134, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). An indictment may therefore not be broadened through amendment by jury instructions or physical alteration. United States v. Pazsint, 703 F.2d 420, 423 (9th Cir.1983), later appeal, 728 F.2d 411 (9th Cir.1984). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984).
 
 
 36
 This Court will find a constructive amendment where there is a "complex of facts distinctly different from those set forth in the charging instrument." Id. This is often considered along with variance, which "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Id., citing United States v. Cusmano, 659 F.2d 714, 718 (6th Cir.1981), later appeal, 729 F.2d 380, cert. denied, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). Unlike constructive amendment, which is per se reversible, a variance does not require reversal unless the "substantial rights" of the parties are affected. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). This insures that the defendant is informed of the charges to prepare his defense and that the defendant is protected from double jeopardy. Id., 295 U.S. at 82, 55 S.Ct. at 630. See also, Von Stoll, 726 F.2d at 586, citing United States v. Kaiser, 660 F.2d 724, 730 (9th Cir.), cert. denied, House v. United States, 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1981), and cert. denied, Remsing v. United States, 457 U.S. 1121, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982); United States v. Lyman, 592 F.2d 496, 500 (9th Cir.1978), cert. denied, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979).
 
 
 37
 Alternatively, courts will find a constructive amendment "where the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." Von Stoll, 726 F.2d at 586. A constructive amendment will not be found if the instructions adequately set out the elements of the offense charged, United States v. Mitchell, 744 F.2d 701, 704 (9th Cir.1984); United States v. Lyman, 592 F.2d 496, 500 (9th Cir.1978) (court may withdraw a portion of the charge if the offense charged remains the same), and when the essential elements of the charge remain the same. United States v. Mastelotto, 717 F.2d 1238, 1248 (9th Cir.1983). Jury instructions which permit the jury to convict the defendant for an offense not charged is plain error and per se reversible. United States v. Vowiell, 869 F.2d 1264, 1271 (9th Cit.1989); Pazsint, 703 F.2d at 423.
 
 
 38
 Appellant claims, in essence, that the trial court's instructions allowed the jury to convict the defendant on a "complex of facts" introduced at trial that was different from those set forth in the indictment. Appellant argues that because the government could not prove that he produced as many BART tickets as were sold to the co-defendants using the methods testified to at trial, the jury would infer that he received the tickets from someone else, and hence would have been involved in a conspiracy separate from the one charged in the indictment.
 
 
 39
 In support of his position, defendant cites Howard v. Daggett, 526 F.2d 1338 (9th Cir.1975), in which the indictment charging the defendant with interstate travel in aid of prostitution specified two women to whom defendant's alleged illegal acts or purposes related. Evidence was presented at trial that dealt with the defendant's relationships with women other than the two named in the indictment. The jury instructions did not specifically identify the women named in the indictment, and the court gave a supplemental instruction which in effect allowed the jury to convict appellant on the basis of evidence introduced at trial regarding women other than the two named in the indictment. This Court held that the supplemental instruction constituted an impermissible amendment of the indictment.
 
 
 40
 The indictment in the case at bar also specifically named parties involved in the offenses charged, while a portion of the jury instructions were generalized. The cases are distinguishable, however. In Howard, none of the instructions mentioned the two women specified in the indictment; in the present case, the jury instructions specifically named the co-defendants and stated that the jury could convict only if it found the existence of the charged conspiracy. Further, while the government in Howard introduced evidence of defendant's with other women, in this case the only mention of other conspirators was brought in during closing remarks by the defense counsel, when the possibility was raised that the defendant had purchased tickets from unidentified persons. The government specifically limited its case to the theory that the conspiracy consisted of only the indicted defendants.
 
 
 41
 The appellant has not demonstrated that he was surprised at trial by any evidence which varied from the charges in the indictment, and has not claimed that he is subject to double jeopardy. There was therefore no constructive amendment due to a "complex of facts" not charged in the indictment, nor was there a fatal variance.
 
 
 42
 Further, the instructions adequately set out the elements of the conspiracy charged. Mitchell, 744 F.2d at 704. The essential elements of conspiracy are an "agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." United States v. Cloud, 872 F.2d 846, 852 (9th Cir.1989); United States v. Oropeza, 564 F.2d 316, 321 (9th 1977), cert. denied, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). All of these elements were included in the instructions. See also, United States v. Davis, 679 F.2d 845, reh. denied, 685 F.2d 1389 (11th Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983) (indictment not constructively amended by dismissal of two co-conspirators since none of the essential elements of the charge was altered). The instructions here were not plainly erroneous.
 
 
 43
 2. Definition of an essential element of the charged offense
 
 
 44
 Defendant was convicted of a violation of 18 U.S.C. § 666, for theft or bribery concerning programs receiving Federal funds. This statute confers jurisdiction over the federal courts only if the property embezzled, stolen, or converted is valued at $5,000 or more. The jury instructions relating to the value of the property were as follows:
 
 
 45
 To find the defendant guilty of the offense charged in Count I you must find that the government proved beyond a reasonable doubt that defendant took BART property valued at more than $5,000.
 
 
 46
 You may make this determination based on the total face value of BART tickets taken at different times, whether one or many tickets were taken. Only if you find that the BART tickets were taken as part of a continuous scheme or plan and BART tickets had a value of over $5,000 [sic].
 
 
 47
 However, if you find that the defendant merely acted from time to time upon some original intent to unlawfully take BART fare tickets, then you must consider the total value of tickets taken at different times separately.[3]
 
 
 48
 Appellant challenges the district court's failure to instruct the jury that the value of any property which it found was stolen, embezzled or controverted must be determined at the point of taking. Appellant contends the court's instructions failed to define an essential element of the charged offense, i.e. the time at which the value of the property taken was to be determined, which undermined appellant's right to require the prosecution to prove each element beyond a reasonable doubt and appellant's right to require the conviction to be supported by legally sufficient evidence. Appellant cites United States v. Harvey, 428 F.2d 782, 783 n. 1 (9th Cir.1970), in which the Court held that "if [certain] terms are essential to a correct definition of [an] element of the crime, or if the failure to define them amounts to an impermissible amendment of the indictment, such refusal would constitute plain error."
 
 
 49
 Washington contends if the jury had been given a definition of the time of taking, the jury may have found the time of taking was when he obtained the blank tickets for his own use. If that was the case, the blank tickets were essentially worthless and the statutory amount of $5,000 would not have been met.
 
 
 50
 The government agrees that the value of the tickets is determined at the time and place of the taking. United States v. Paulino, 717 F.2d 1276 (9th Cir.1983) ("When the offense charged is the theft of property of a certain value, evidence must show the value of the property at the time of the theft."), citing United States v. Luckey, 655 F.2d 203, 205 (9th Cir.1981). However, the government asserts that the BART tickets were embezzled or converted at the time they were sold to the co-conspirators; Washington was allowed to possess blank and encoded tickets under some circumstances, and mere possession would not necessarily have been an offense. Embezzlement is the "fraudulent conversion of the property of another by one who is lawfully in possession of it." United States v. Dupee, 569 F.2d 1061 (9th Cir.1978). Because Washington could have been in lawful possession of the blank tickets, but could not have legally sold encoded tickets to the co-defendants, the district court's failure to instruct the jury to value the tickets "at the time of taking" was not erroneous.
 
 CONCLUSION
 
 51
 The indictment was not constructively amended by the trial court: there was not a "complex of facts" proven at trial which differed distinctly from those charged in the indictment, and the jury instructions did not substantially alter the crime charged.
 
 
 52
 Further, the district court did not commit error by failing to instruct the jury that property stolen, embezzled, or converted is valued "at the time of taking."
 
 
 53
 Appellant's convictions are AFFIRMED.
 
 
 
 *
 The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This testimony ignores the fact that the test bench at the Ashby station was removed in 1980
 
 
 [2]
 Defendant's failure to object to the challenged portion of the conspiracy instructions dictates that this Court review the instructions for "plain error"
 
 
 [3]
 As defendant did not object to these instructions, they will be reviewed for plain error