NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 16 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10151 |
| Plaintiff-Appellee, | D.C. No. 5:13-cr-00736-EJD-1 |
| v. | |
| SANJIV KAKKAR, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted March 13, 2018
San Francisco, California

Before: PAEZ and IKUTA, Circuit Judges, and VITALIANO,[**] District Judge.

Defendant-appellant Sanjiv Kakkar appeals his conviction and sentence following a jury trial on one count of making false statements to a federally insured bank to secure a loan, in violation of 18 U.S.C. § 1014, and various counts of wire fraud, in violation of 18 U.S.C. § 1343. Kakkar argues here that certain highly

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

prejudicial evidence was erroneously admitted by the district court, that the evidence was insufficient to support the jury's verdict, that the district court constructively amended the indictment and that the district court improperly computed economic loss both for purposes of determining the applicable Sentencing Guidelines range and for the award of restitution. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

The linchpin for Kakkar's challenge to his conviction was the district court's admission of his 2007 and 2008 fraudulent income tax returns into evidence over his hearsay objection, a ruling for which much fume and fury was reserved at trial and in the briefing on this appeal. We review the district court's evidentiary determinations for abuse of discretion, *United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir. 1998), and we agree that the tax returns were properly admitted. The foundational requirements for admission of the tax returns as business records were met when the bank's custodian of records testified that they were maintained in the bank's loan file in the regular course of business, as the bank relied on such records and had a substantial interest in their accuracy. *See MRT Constr. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998). Any other objection to the receipt of the tax returns into evidence went merely to their evidentiary weight. We conclude, moreover, that there was ample evidence to allow a reasonable juror to find beyond a reasonable doubt that Kakkar had submitted the false tax returns

2

to the bank in order to secure the subject loan. *See United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010); *United States v. Foster*, 711 F.2d 871, 875 (9th Cir. 1983).

The absence of direct proof of precisely when the bank received the fraudulent tax documents from Kakkar, however, provided backbone for Kakkar's argument that the district court constructively amended the indictment in contravention of the Fifth Amendment, which is a claim that we review de novo. *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006). The indictment alleged that Kakkar had engaged in fraud "to secure the loan," which Kakkar contends should be read as "to obtain the loan." On the contrary, the indictment charges the making of a false representation "in connection with" a bank loan. As a consequence, since we conclude that there is sufficient evidence to support a finding that Kakkar submitted the tax returns to the bank in connection with the loan, the fact that one or both tax documents may have been submitted to the bank after Kakkar had obtained the loan does not amount to a constructive amendment of the indictment. Especially given the government's notice before trial that it would pursue this theory of prosecution, this interpretation of the language of the indictment was, at most, a non-prejudicial variance, rendering any error harmless. *See United States v. Von Stoll*, 726 F.2d 584, 586–87 (9th Cir. 1984).

Next, Kakkar argues that there was insufficient evidence to support his conviction on the wire frauds charged in the indictment by disputing whether the bank or a middle man transfer agency (Dixieline) was actually defrauded of funds. Contrary to Kakkar's assertions, we conclude that there is sufficient evidence that not only were the fraudulent invoices, which Kakkar initially sent to Dixieline, subsequently submitted to the bank, but that the bank acted on that false information in approving Dixieline's disbursement of funds to Kakkar. *United States v. Ali*, 620 F.3d 1062, 1070 (9th Cir. 2010). Therefore, the evidence supports the conclusion that "any rational trier of fact could have found the essential elements" of wire fraud beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Finally, we review for clear error Kakkar's challenges to the district court's calculation of loss for purposes of determining the applicable Sentencing Guidelines range and restitution amount. *United States v. Zolp*, 479 F.3d 715, 718 (9th Cir. 2007); *United States v. Pizzichiello*, 272 F.3d 1232, 1240 (9th Cir. 2001). While the evidentiary record could have been more robust, there was no clear error either in the district court's computation of the Sentencing Guidelines range or its order of restitution. The district court did not clearly err in determining that Kakkar's fraudulent behavior caused the loss of the entire amount of the loan less loan repayments because Kakkar's failure to provide accurate financial records

4

prevented the bank from foreclosing while the property's value could have covered the loan amount. Nor was it clear error for the district court to conclude that the bank did not retain any insurance proceeds. Finally, the district court did not clearly err in using the credit bid in its calculation of loss because there is no evidence in the record that the Brookdale Inn was more valuable than the credit bid.

**AFFIRMED.**